1  ROBBINS GELLER RUDMAN
    & DOWD LLP
2  CHRISTOPHER COLLINS (189093)
   655 West Broadway, Suite 1900
3  San Diego, CA 92101-3301
   Telephone: 619/231-1058
4  619/231-7423 (fax)
   chrisc@rgrdlaw.com
5    – and –
   STUART A. DAVIDSON
6  CULLIN A. O'BRIEN
   MARK DEARMAN
7  120 East Palmetto Park Road, Suite 500
   Boca Raton, FL 33432
8  Telephone: 561/750-3000

9  Attorneys for Plaintiffs

10           UNITED STATES DISTRICT COURT

11          CENTRAL DISTRICT OF CALIFORNIA

12              SOUTHERN DIVISION

13  BEVERLY MEYER, Individually and      )  Case No. SACV11-696 AG-(MLGx)
14  on Behalf of All Others Similarly    )
    Situated,,                           )  (Pending in the United States District
15                                       )  Court for the Southern District of
                          Plaintiff,     )  Florida, Civil Actions 10-61781-JAL
16                                       )  and 10-61793-JAL)
              vs.                        )
17                                       )  MOTION TO COMPEL
    COLAVITA USA INC., and               )
18  COLAVITA USA, L.L.C.,                )  DATE: TBD  June 7, 2011
                                         )  TIME: TBD  10:00AM
19                        Defendants.    )  CTRM: TBD  6AM
                                         )
20  JOSEPH NACHIO, Individually and on   )
    Behalf of All Others Similarly Situated, )
21                                       )
                          Plaintiff,     )
22                                       )
              vs.                        )
23                                       )
    AMERICAN RICE INC., POMPEIAN         )
24  INC., and SALOV NORTH AMERICA        )
    CORPORATION,                         )
25                                       )
                          Defendants.    )
26                                       )

27

28

622973_1

1

**TABLE OF CONTENTS**

2
**Page**

3   I.    INTRODUCTION ........................................................................ 1

4   II.   ARGUMENT ............................................................................. 3

5         A.   The Subpoenas to Sachs Are Proper .................................... 3

6              1.   The Documents Are Relevant ...................................... 3

7              2.   The Subpoenas Comply with Rule 45 ............................ 4

8         B.   Sachs Violated Rule 45 ...................................................... 4

9              1.   Sachs Should Have Filed Privilege Logs .................... 4

10  III.  SACHS WAIVED ANY PRIVILEGE ......................................... 6

11        A.   Legal Standard for Work Product Analysis ......................... 6

12             1.   Waiver of Work Product Protection ............................ 6

13  IV.   CONCLUSION ......................................................................... 8

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

622973_1

- i -

1

## TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

*Bd. of Trs. of the Leland Stanford Junior Univ. v.*
5
*Roche Molecular Sys.,*
6
    237 F.R.D. 618 (N.D. Cal. 2006) ................................................................ 6, 7

7
*Behrend v. Comcast Corp.,*
    248 F.R.D. 84 (D. Mass. 2008) ...................................................................... 4
8

9
*Bozzuto v. Cox,*
    255 F.R.D. 673 (C.D. Cal. 2009) .................................................................. 6
10

11
*Eureka Fin. Corp. v. Hartford Accident & Indem. Co.,*
    136 F.R.D. 179 (E.D. Cal. 1991)................................................................... 5
12

13
*Great Am. Assurance Co. v. Liberty Surplus Ins. Corp.,*
    669 F. Supp. 2d 1084 (N.D. Cal. 2009) ......................................................... 7

14
*HLC Props., Ltd. v. Superior Court,*
15
    35 Cal. 4th 54, 24 Cal. Rptr. 3d 199
    105 P.3d 560 (2005) .................................................................................. 6, 7
16

17
*Martin v. Carapelli USA, LLC, et al.,*
    No. 30-2010-00395464-CU-FR-CXC
18
    (Cal. Super. Ct., Orange Cnty.) ..................................................................... 1

19
*Mass. Sch. of Law v. Am. Bar Ass'n,*
20
    914 F. Supp. 1172 (E.D. Pa. 1996) ............................................................... 5

21
*Transamerica Computer Co. v. Int'l Bus. Mach. Corp.,*
    573 F.2d 646 (9th Cir.1978)......................................................................... 7
22

23
*Ventre v. Datronic Rental Corp.,*
    No. 92 C 3289, 1995 WL 42345
24
    (N.D. Ill. Feb. 2, 1995)................................................................................. 5

25

26

27

28

622973_1

1

2                                                                                    **Page**

3  **STATUTES, RULES AND REGULATIONS**

4  California Evidence Code

5      §911 ..................................................................................................... 7
       §912 ..................................................................................................... 7
6      §912(a) ................................................................................................. 7

7  Florida Deceptive Trade Practices Act
8      Fla. Stat. §501.201 ............................................................................. 1

9  Federal Rules of Civil Procedure
10     Rule 26 .................................................................................................. 1
       Rule 26(b)(1) ..................................................................................... 3, 4
11     Rule 26(b)(3) ........................................................................................ 6
12     Rule 45 .......................................................................................... 1, 4, 5
       Rule 45(d) ......................................................................................... 4, 5
13

14 Federal Rules of Evidence
       Rule 501 ................................................................................................ 7

15

16

17

18

19

20

21

22

23

24

25

26

27

28

622973_1

1    Pursuant to Federal Rules of Civil Procedure 26 and 45, Beverly Meyer and

2  Joseph Nachio (collectively, "Plaintiffs") respectfully move this Court for an Order

3  compelling the production of documents sought by properly-issued subpoenas from

4  third party Michael J. Sachs ("Sachs").

5  **I.   INTRODUCTION**

6    Plaintiffs have filed putative class actions filed in the Southern District of

7  Florida[1] against Colavita USA Inc., Colavita USA, L.L.C., American Rice Inc.,

8  Pompeian Inc. and Salov North America Corporation (collectively, "Defendants") for

9  deceptive advertisement of its extra virgin olive oil products (hereinafter referred to as

10 "products at issue"), alleging causes of action under Florida's Deceptive and Unfair

11 Trade Practices Act ("FDUTPA") and breach of express warranty.[2]

12    Sachs is not a party to these actions, but instead is an attorney with the firm of

13 Callahan & Blaine, a California based law firm. Sachs represented California based

14 plaintiffs in a similar litigation against Defendants, as well as other olive oil

15 manufacturers and retailers ("California Oil Litigation").[3]  On December 9, 2010,

16 Sachs dismissed the California Oil Litigation.[4]  On December 10, 2010, Sachs also

17 filed the Declaration of Michael J. Sachs Requesting Dismissal of Class Action

18 ("Sachs Declaration") with the California court.[5]  In the Sachs Declaration, Sachs

19 claimed that Callahan & Blaine conducted exhaustive testing and analysis, but that the

20 _____

21 [1]    These cases are styled as *Meyer v. Colavita USA Inc., et al.*, No. 10-61781 (S.D.
22 Fla.), and *Nachio v. American Rice Inc., et al.*, No. 10-61793 (S.D. Fla.), and were
   consolidated for purposes of discovery.

23 [2]    The *Meyer* and *Nachio* complaints are attached hereto as Ex. A.

24 [3]    The California Oil Litigation is styled as *Martin v. Carrabelle USA, LLC, et al.*,
25 No. 30-2010-00395464-CU-FR-COX (Cal. Super. Ct., Orange City.) and the
   complaint is attached hereto as Ex. B.

26 [4]    *See* Request for Dismissal, attached hereto as Ex. C.

27 [5]    The Sachs Declaration is attached hereto as Ex. D.

28

622973_1

1  results were inconclusive or required further analysis.  This was further conceded by

2  another lawyer at Callahan & Blaine, Daniel J. Callahan Esq. ("Callahan"), when he

3  told a reporter for the College Times on April 14, 2011, that his firm ran into

4  difficulties when they sent samples of olive oil for testing.[6]  Sachs is, therefore, in

5  possession of testing documents that will lead to the discovery of admissible evidence

6  or that otherwise bear directly on the issues in this case.  For that reason, Plaintiffs

7  attempted to contact Sachs on many occasions to informally obtain the materials, but

8  were not successful.

9        On March 22, 2011, counsel for Plaintiffs each issued a subpoena *duces tecum*

10  (the "Subpoenas") to Sachs.[7]  The Subpoenas to Sachs were narrowly-tailored and

11  only requested the production of: (1) documents relating to the testing of the oils, and

12  the results thereof; (2) documents relating to the analysis of the oils, and the results

13  thereof; (3) documents which he relied upon in making the Sachs Declaration that he

14  performed exhaustive testing; and (4) documents upon which Sachs represented in the

15  Sachs Declaration that the results of the testing were inconclusive and further testing

16  was necessary.

17        In response to the Subpoenas, Sachs served boilerplate objections, including the

18  attorney work product privilege doctrine and/or the attorney-client privilege doctrine

19  as a total shield to producing any of the requested documents.[8]  No documents have

20  been produced by Sachs. Moreover, based on the boilerplate objections, without a

---

21

22  [6]    *See* http://www.ecollegetimes.com/student-life/doubts-over-olive-oil-are-raised-
23  anew-1.2542967, attached hereto as Ex. E.

24  [7]    The Subpoenas are attached hereto as Ex. F.

25  [8]    Sachs asserted non-privilege objections of "overbroad [and] burdensome" based
   on the definition section of Plaintiffs' Subpoenas.  *See* Objections to Subpoena to
26  Produce Documents of Michael J. Sachs, attached hereto as Ex. G. However, during a
   meet and confer with Sachs on April 25, 2011, counsel for Plaintiffs made the limited
27  nature of the documents crystal clear. Nevertheless, despite this clarification Sachs
   still will not produce any documents.

28

622973_1

1   privilege log or anyway to determine if either the attorney-client privilege or the work

2   product privilege apply, this motion was unavoidable.[9]   Undersigned counsel

3   conferred with Defendants in both the *Meyer* and *Nachio* matters and they do not

4   oppose the relief sought in this Motion to Compel.

5       Because Sachs was properly issued subpoenas to produce documents that are

6   reasonably calculated to lead to the discovery of admissible evidence, and because

7   Sachs made it heretofore impossible to receive those documents, Plaintiffs

8   respectfully move this Court to for an Order compelling Sachs to produce all of the

9   subpoenaed documents.

10  **II.   ARGUMENT**

11      **A.   The Subpoenas to Sachs Are Proper**

12          **1.   The Documents Are Relevant**

13      Rule 26(b)(1) provides: "Parties may obtain discovery regarding any

14  nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R.

15  Civ. P. 26(b)(1).  Importantly, Sachs does not object to any of the requests contained

16  within the subpoena based on relevance.

17      The Subpoenas are narrowly-tailored and request documents relating to: (1) the

18  testing of the oils, and the results thereof; (2) the analysis of the oils, and the results

19  thereof; (3) any documents upon which Sachs relied upon in making the Sachs

20  Declaration that he performed exhaustive testing; and (4) any documents upon which

21  Sachs represented in the Sachs Declaration that the results of the testing were

22  inconclusive and further testing was necessary.   With just four requests, the

23

24  _____

25  [9]   While the failure to provide anything except for boilerplate privilege objections
    makes it difficult to ascertain what documents are protected by either privilege raised,
26  Plaintiffs are not seeking documents which are protected by the attorney-client
    privilege.  In fact, during the meet and confer of April 25, 2011, Sachs admitted his
27  firm paid for the testing and analysis by a third party (or parties). On the other hand,
    any work product objections have been waived, as explained herein.

28

622973_1

1  Subpoenas seek relevant information concerning testing and results for Defendants'
2  extra virgin olive oil products at issue in Plaintiffs' actions. *Id.*

3        Because Sachs stated under oath that he dismissed the California Oil Litigation
4  based on these tests and results, and because the Subpoenas seek documents directly
5  relating to the tests and results which caused Sachs to dismiss the case, the Subpoenas
6  are clearly discoverable under Rule 26(b)(1).

7               **2.**      **The Subpoenas Comply with Rule 45**

8        Because Sachs is a non-party, Fed. R. Civ. P. 45 is the proper vehicle for
9  Plaintiffs to seek the discoverable materials. *See, e.g., Behrend v. Comcast Corp.*, 248
10  F.R.D. 84, 87 (D. Mass. 2008) (non-party required to produce documents in response
11  to subpoena *duces tecum* under Rule 45). Plaintiffs properly served a subpoena *duces*
12  *tecum* on Sachs in compliance with Rule 45, in the Central District of California,
13  where Sachs is located. Sachs does not raise objections to the use of the Rule 45
14  Subpoenas as an improper method to obtain the requested documents.

15      **B.**    **Sachs Violated Rule 45**

16               **1.**      **Sachs Should Have Filed Privilege Logs**

17        Rule 45(d) sets forth a specific procedure for objecting to properly issued
18  subpoena:

19      (2) Claiming Privilege or Protection.

20      (A) Information Withheld.  A person withholding subpoenaed
21      information under a claim that it is privileged or subject to protection as
22      trial-preparation material must:

23      (i) expressly make the claim; and

24      (ii) describe the nature of the withheld documents, communications, or
25      tangible things in a manner that, without revealing information itself
26      privileged or protected, will enable the parties to assess the claim.

27  Fed. R. Civ. P. 45(d).

28

622973_1

1        In the 1991 Amendment to Rule 45(d), the Rules Committee made clear that the

2  procedure is meant to prevent litigants from unilaterally deciding "the limits of that

3  party's own entitlement." Fed. R. Civ. P. 45(d) advisory committee's note (1991).

4  The Rules Committee went on to state: "A person claiming a privilege or protection

5  who fails to provide adequate information about the privilege or protection claim to

6  the party seeking the information is subject to an order to show cause why the person

7  should not be held in contempt . . . ." *Id.*; *see also Ventre v. Datronic Rental Corp.*,

8  No. 92 C 3289, 1995 WL 42345, at *1-*4 (N.D. Ill. Feb. 2, 1995) (citing Rules

9  Committee).

10       Sachs has not provided Plaintiffs or the Court with any privilege logs pursuant

11  to Rule 45(d). Nor is there any adequate information or justification for why Sachs

12  unilaterally decided to not produce any documents. This plainly violates Rule 45. As

13  the court in *Mass. Sch. of Law v. Am. Bar Ass'n*, 914 F. Supp. 1172 (E.D. Pa. 1996),

14  stated:

15       A general objection is insufficient. The purpose of the rule is to provide

16       a party whose discovery is constrained by a claim of privilege with

17       information sufficient to evaluate the claim and to resist it. The party

18       claiming the privilege cannot decide the limits of his entitlement. A

19       person who fails to provide adequate information about the privilege to

20       the party seeking the information may be held in contempt or be

21       subjected to sanctions. . . . Moreover, failure to assert a privilege

22       properly may amount to a waiver of that privilege. . . . It follows that a

23       party who alleges privilege as a reason for not complying with a

24       subpoena has the burden of proof to assert specific facts relating to

25       specific documents and cannot rely on conclusory statements.

26  *Id.* at 1178; *cf. Eureka Fin. Corp. v. Hartford Accident & Indem. Co.*, 136 F.R.D.

27  179, 183-84 (E.D. Cal. 1991).

28

622973_1

## III.   SACHS WAIVED ANY PRIVILEGE

With nothing but boilerplate objections, Plaintiffs are unable to ascertain the nature of the documents which may be subject to protection based on any privilege. However, Plaintiffs are not seeking documents protected by the attorney-client privilege. As to Sachs' claim for work product protection, that privilege has been waived.

Sachs waived any work product privilege that could be claimed when Callahan stated in open court that testing was completed in Germany and was continuing in the United States,[10] when Sachs filed the Sachs Declaration, and when Callahan told the College Times that the results of the tests his firm had done, and that they did not support their claims in the California Oil Litigation. Put simply, the lawyers at Callahan & Blaine, disclosed, in a general sense, the very conclusions of the testing and analysis at issue. As a result, the attorney-client privilege and the work product privilege does not exist or was waived.

### A.   Legal Standard for Work Product Analysis

The party claiming a privilege shoulders the burden of showing that the evidence it seeks to suppress falls within the terms of an applicable statute. *HLC Props., Ltd. v. Superior Court*, 35 Cal. 4th 54, 59, 24 Cal. Rptr. 3d 199, 105 P.3d 560 (2005). Unlike issues of attorney-client privilege, issues concerning the work product doctrine are procedural and thus governed by Fed. R. Civ. P. 26(b)(3). *Bozzuto v. Cox*, 255 F.R.D. 673, 677 (C.D. Cal. 2009).

#### 1.   Waiver of Work Product Protection

"[I]n cases where the voluntary disclosure of attorney work product to [a] . . . third party substantially increases the possibility of an opposing party obtaining the information, this would 'defeat the policy underlying the privilege.'" *Bd. of Trs. of*

---

[10]   *See* November 3, 2010, Case Management Conference Minute Order, attached hereto as Ex. H.

622973_1

1   *the Leland Stanford Junior Univ. v. Roche Molecular Sys.*, 237 F.R.D. 618, 623 n.3

2   (N.D. Cal. 2006) (citation omitted).   In such a case, work product waiver may be

3   analyzed using the same analysis as for attorney-client privilege waiver.  *Id.*; *see also*

4   *Transamerica Computer Co. v. Int'l Bus. Mach. Corp.*, 573 F.2d 646, 648 n.1 (9th Cir.

5   1978) (using the same analysis for attorney-client privilege and work product waiver

6   when a document was handed over to a litigation adversary).

7          In utilizing that attorney-client privilege waiver analysis to determine if the

8   work product privilege has been waived, Cal. Evid. Code §912(a) states the applicable

9   rule with respect to waiver of privileges: "[privilege] is waived with respect to a

10  communication protected by the privilege if any holder of the privilege, without

11  coercion, has disclosed a significant part of the communication or has consented to

12  disclosure made by anyone."   Consent to disclosure is manifested by any statement or

13  other conduct of the holder.[11]  Cal. Evid. Code §912.

14         Sachs has not met his burden and has waived the work product privilege.  *See*

15  *HLC*, 35 Cal. 4th at 59.   Waiver occurred as follows:

16         First, On November 3, 2010, Callahan announced during a Case

17         Management Conference, that testing in Germany had been completed

18         and testing in the United States was ongoing.  This disclosure waived

19         any work product or attorney-client privilege.

20         The privilege was again waived on December 8, 2010 when Sachs disclosed in

21  the Sachs Declaration that "Callahan & Blaine has had conducted exhaustive testing

22  and analysis of the olive oil products of the Defendants in the instant action to confirm

23  that they support the allegations made in the Complaint.  Unfortunately, the results of

_____

25  [11]      Fed. R. Evid. 501, dictates that attorney-client issues in diversity cases are
     substantive and thus controlled by the forum state's law. *Great Am. Assurance Co. v.*
26  *Liberty Surplus Ins. Corp.*, 669 F. Supp. 2d 1084,1090 (N.D. Cal. 2009).   The
     California Evidence Code declares that the attorney-client privilege is governed by
27  statute.  Cal. Evid. Code §911.

28

622973_1

1  the testing have been inconclusive and additional testing and analysis is necessary in
2  order to determine whether this action should be maintained against the currently
3  named Defendants." *See Sachs Declaration, ¶2.*

4      In addition to the previous two instances of waiver, on April 14, 2011, Sachs
5  again waived any potential privilege when Callahan disclosed to the College Times
6  that, "his firm ran into difficulties when it sent olive oil samples to various
7  laboratories for testing: [t]he results, he said, were inconsistent" and that "'[t]here
8  were good grades in Georgia, but bad in California.'" *See Ex. E.*

9      Sachs cannot prove that the disclosure of the testing and the results was
10  anything but voluntary. The statement made at the Case Management Conference, the
11  Sachs Declaration and the College Times article, are all actions inconsistent with
12  maintaining privilege. The disclosures were made in a public forum and were
13  available to anyone who was interested. Thus, as with the attorney-client privilege,
14  there was a voluntary waiver of the attorney work product protection.

15  **IV.   CONCLUSION**

16      Sachs was properly served with a subpoena that included narrowly tailored
17  requests which were relevant to the instant case. Notwithstanding the fact that Sachs
18  failed to properly preserve any privilege objections, Sachs waived his objections by
19  Callahan & Blaine voluntarily disclosing that they tested the relevant products and the
20  results did not support their claims. As such, this Court should order the production of
21  the testing results and analysis and should order Sachs to pay all fees and costs
22  associated with the preparation, filing and argument relating to this Motion.

23  DATED: May 6, 2011              ROBBINS GELLER RUDMAN
                                    & DOWD LLP
24                                  CHRISTOPHER COLLINS
25
26                                  _____
27                                  CHRISTOPHER COLLINS
28

- 8 -

622973_1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
chrisc@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
STUART A. DAVIDSON
CULLIN A. O'BRIEN
MARK DEARMAN
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000

Attorneys for Plaintiffs

622973_1

EXHIBIT A

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

BEVERLY MEYER, Individually and on
Behalf of All Others Similarly Situated,

Case No.:     **10   35097**

       Plaintiff,

CLASS REPRESENTATION

vs.

**14**

COLAVITA USA INC., and COLAVITA
USA, L.L.C.,

JURY TRIAL DEMANDED

      Defendants.

A TRUE COPY

AUG 27 2010

HOWARD C. FORMAN
CLERK OF CIRCUIT COURT
BROWARD COUNTY, FL

## CLASS ACTION COMPLAINT

Plaintiff Beverly Meyer ("Plaintiff"), brings this action on behalf of herself and all others similarly situated against defendants Colavita USA Inc., and Colavita USA, L.L.C., ("Colivita" or "Defendants"), and allege:

## JURISDICTION AND VENUE

1.       This action is brought as a class action pursuant to Florida Rule of Civil Procedure 1.220.

2.       The damages suffered and sought to be recovered herein total, in the aggregate, in excess of the minimum jurisdictional limits of this Court.  Plaintiff's individual claims do not exceed the sum or value of $75,000.00.

3.       Venue is proper in Broward County, Florida because the causes of action asserted herein occurred and/or accrued, among other places, in Broward County, Florida.  Venue is also appropriate in this Court because Colavita conducts substantial business in Broward County and has targeted consumers to purchase their product and has advertised in various media in Broward County.

4.       This action is not removable pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332 (2005), pursuant to *Cappuccitti v. DirecTV, Inc.*, No. 09-14107, 2010 WL 2803093, at *5 (11th Cir. July 19, 2010).

## NATURE OF THE ACTION

5.       This is a consumer class action on behalf of purchasers of Defendants' products that are falsely and deceptively labeled as "extra virgin olive oil" ("EVOO"), which is the highest and most expensive grade for olive oil product.  Colavita markets and sells for a substantial premium its products as being "extra virgin olive oil" when the product clearly does not meet or warrant this "extra virgin" olive oil product grade or the price premium for which it is sold.

2

6.     The International Olive Counsel ("IOC"), the United States Department of Agriculture ("USDA"), and the state of California, the United States' largest domestic olive oil producer, have delineated specific standards for the "extra virgin olive oil" grade. Although it is well aware of these standards, the Colavita does not meet these standards for its products, including the "organoleptic test" (herein referred to as "sensory test").[1]

7.     Indeed, the University of California at Davis ("UC Davis") recently conducted a comprehensive study delineating exactly how the Colavitas' product does not meet these standards (the "Davis Study"). Under the Davis Study, the Colavitas' product, which was advertised, marketed and sold for a premium as "extra virgin olive oil," tested at lower grades of olive oil.

8.     Upon information and belief, these same products tested in the Davis Study are sold to consumers throughout the state of Florida. Given the time-sensitive and fragile logistic processes involved in mass producing true extra virgin olive oil, Colavita cannot produce nearly the quantities of extra virgin olive oil it claims to sell into the United States. Indeed, Colavita does not even bother sending Americans true grade "extra virgin olive oil." Colavita uses the precious little true extra virgin olive oil for sale to consumers in countries that have a longer history of consuming extra virgin olive oil and a taste pallet that commands only this high quality product. Colavita does not respect the American olive oil taste pallet as a whole and bank on the fact that Americans cannot discern between rancid or adulterated olive oil and true extra virgin olive oil.

---

[1]     Since 1948, the USDA regulated olive oil grades and utilized chemical and sensory standards. In light of the volumes of olive oil imported into the United States, on October 25, 2010, the USDA will incorporate many of the IOC regulations.

3

9.     To further its advertizing deception, Colavita manipulates the chemistry of its olive oil and synthetically attempts to reach chemical balances that approximate what real "extra virgin olive oil" might look light underneath a microscope.  But Colavita cannot fake all the indicators of what true extra virgin olive oil really is, including the sensory test, which is exactly what the Davis Study revealed.

10.    Plaintiff, like hundreds of thousands, if not millions, of other Floridians has been duped by Colavitas' false, deceptive and unfair marketing campaign of its purportedly "extra virgin olive oil."  In short, Plaintiff and the class have not received the benefit of their bargains as a result of Colavitas' false, deceptive and unfair marketing campaign, including Colavitas' product labels.  Plaintiff and the class have sought to purchase real "extra virgin olive oil" and have instead received rancid or adulterated olive oil.  And, indeed, Plaintiff and the class have paid a premium price on the fake "extra virgin olive oil" sold to them by Colavita.

11.    In this action, Plaintiff seeks to recover the benefit of the bargain for herself and the class and to enjoin Colavita from continuing with its false, deceptive and unfair marketing campaign of products that do not meet the "extra virgin olive oil" standard as advertised.

PARTIES

12.    At all times relevant to this matter, Plaintiff Beverly Meyer resided and continues to reside in this County.  During the class period, Plaintiff was exposed to and saw Colavitas' advertising claims, purchased Colavita Extra Virgin Olive Oil (also referred to herein as "Colavita Brand"), and suffered injury in fact and lost money because of the unfair and deceptive trade practices described herein.  Plaintiff did not receive the benefit of her bargain in each purchase of Colavita Brand. Plaintiff further paid a price premium for each purchase of Colavita Brand.

4

13

13.     Colavita USA Inc., is incorporated in New Jersey and is headquartered in Linden, New Jersey. Colavita is a wholly owned subsidiary of Colavita S.P.A. Colavita promotes markets, distributes and sells Colavita Extra Virgin Olive Oil to thousands of consumers in the State of Florida, including Broward County, Florida. Colavita USA Inc., imports a significant share of the EVOO consumed in the United States. Upon information and belief, the Colavita Brand uses olives that come from France, Greece, Israel, Italy, Morocco, Portugal, Spain, Tunisia, and Turkey.

14.     Colavita USA, L.L.C., is a limited liability company and is headquatered in Linden, New Jersey. Colavita is a wholly owned subsidiary of Colavita S.P.A. Colavita promotes markets, distributes and sells Colavita Extra Virgin Olive Oil to thousands of consumers in the State of Florida, including Broward County, Florida. Colavita USA, LLC, imports a significant share of the EVOO consumed in the United States. Upon information and belief, the Colavita Brand uses olives that come from France, Greece, Israel, Italy, Morocco, Portugal, Spain, Tunisia, and Turkey.

## CLASS REPRESENTATION ALLEGATIONS

15.     Plaintiff brings this lawsuit on behalf of herself and the proposed Class members under Rules 1.220(b)(2) and (b)(3) of the Florida Rules of Civil Procedure. The proposed Class consists of:

> *All persons who purchased Colavita Brand product labeled as "extra virgin"*
> *olive oil in the State of Florida.*

16.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint. Specifically excluded from the proposed Class are Colavitas' officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees,

5

principals, servants, partners, joint venturers, or entities controlled by Colavita, and their, successors, assigns, or other persons or entities related to or affiliated with Colavita and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

17.     *Numerosity*.  The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains many thousands of members.  The precise number of Class members is unknown to Plaintiff.  The true number of Class members is known by Colavita, its distributors and retailers, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

18.     *Existence and Predominance of Common Questions of Law and Fact.* Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

(a)     whether Colavita had adequate substantiation for their claims prior to making them;

(b)     whether the claims discussed above are true, or are misleading, or reasonably likely to deceive;

(c)     whether Colavitas' alleged conduct violates public policy;

(d)     whether the alleged conduct constitutes violations of the laws asserted herein;

(e)     whether Colavita engaged in false or deceptive advertising;

6

(f)       whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss;

(g)       whether Plaintiff and Class members are entitled to declaratory and injunctive relief.

19.     *Typicality.*  Plaintiff's claims are typical of the claims of the members of the Class in that Colavita was unjustly enriched as a result of Plaintiff's and the Class' respective purchases of EVOO.

20.     *Adequacy of Representation.*   Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained counsel highly experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Class.

21.     *Superiority.*  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Colavita.  It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

22.     In the alternative, the Class may also be certified because:

(a)     the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for Colavita;

(b)     the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Colavita has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

23.     The claims asserted herein are applicable to all customers throughout the State of Florida who purchased EVOO. Adequate notice can be given to Class members directly using information maintained in Colavitas' records, the records of third parties, or through notice by publication.

24.     Damages may be calculated, in part, from the sales information maintained in Colavitas' records, or the records of third parties, so that the cost of administering a recovery for the Class can be minimized. However, the precise amount of damages available to Plaintiff and the other members of the Class is not a barrier to class certification.

25.     Unless a class is certified, Colavita will retain monies received as a result of its conduct that was taken from Plaintiff and proposed Class members. Unless a class-wide injunction is issued, Colavita will continue to commit the violations alleged, and the members of the Class will continue to be misled.

8

## SUBSTANTIVE ALLEGATIONS

*Extra Virgin Olive Oil*

26.    American Consumers spend an amazing $700 million a year on olive oil labeled as "extra virgin" not realizing that many of these products, including those purchased from Colavita, is not worthy of the benefit of the bargain, much less the premium prices attached to the products.

27.    At the pinnacle of the olive oil industry sits extra-virgin olive oil — the  gold standard.  The term "extra virgin" is defined by the International Olive Counsel ("IOC"), the USDA, and the state of California, the United State's largest domestic olive oil producer.

28.    Since Colavita is required to comply with the IOC, the USDA, and the laws of the state of California, in those respective jurisdictions, Colavita clearly knows what the term "extra virgin" means.

29.    Specifically, the IOC defines "extra virgin" olive oil as:  Extra virgin olive oil: virgin olive oil which has a free acidity, expressed as oleic acid, of not more than 0.8 grams per 100 grams, and the other characteristics of which correspond to those fixed for there category in there standard.  The IOC defines a sensory taster as an individual who is specialized in the sensory analysis of a specific product and has a basic understanding of the preparation of the product and market preferences.  The IOC utilizes a protocol for its sensory testing which includes, but is not limited to, perception, sensation, and sensitivity.

30.    Since 1948, the USDA has regulated olive oil grades and utilized both chemical and sensory standards to determine quality.  Currently, quality is rated on a scale of A, which has the charecteristics of what the IOC and others refer to as EVOO, B, and C.  In light of the

9

volumes of olive oil imported into the United States, on October 25, 2010, the USDA will incorporate many of the IOC regulations into an updated set of voluntary standards.

31.     The new USDA standards define "U.S. Extra Virgin Olive Oil" as: virgin olive oil which has excellent flavor and odor (median of defects equal to zero and median of fruitiness greater than zero) and a free fatty acid content, expressed as oleic acid, of not more than 0.8 grams per 100 grams, and meets the additional requirements as outlined in §52.1539, as appropriate.  Section 52.1539 sets forth the criteria to ascertain the grade of the oil using both chemical and sensory standards.

32.     The state of California defines "extra virgin" olive oil as:

> Extra virgin olive oil means virgin olive oil which has a free acidity, expressed as oleic acid, of not more than 0.8 grams per 100 grams oil, has a peroxide value of not more than 20 milliequivalent peroxide oxygen per kilogram oil and would meet the sensory standards of extra virgin olive oil as determined by a taste panel certified by the International Olive Council, or, if the International Olive Council ceases to certify taste panels, would meet the sensory standards of a taste panel that is operated by the University of California or California State University according to guidelines adopted by the International Olive Council as of 2007.

33.     Practically speaking, only olives picked fresh and slightly unripe, pressed within 24 hours of harvest, and carefully monitored will become extra virgin olive oil within each of the aforementioned standards.  Otherwise, the oil will be among the lower grades of "virgin," "pure," or "light" olive oil.  Indeed, the timing and processing olives to make real extra virgin olive oil is delicate and time-sensitive.  And logistically, there is a problem for companies that use olives from small-scale olive farmers in places like Spain.  Harvesting, collecting, and processing olives from many small-scale olive ranches can inhibit the production of true grade extra virgin olive oil.

*Colavitas' Products Do Not Meet the "Extra Virgin" Olive Oil Standard*

34.     In early 2010, olive oil researchers at UC Davis conducted a study of Colavitas' products, as well as the products of other olive oil companies.  The UC Davis study examined olive oil products that were marketed and labeled by Colavita and other olive oil companies as "extra virgin olive oil" to American consumers in retail stores.  These same products examined by the UC Davis study are, upon information and belief, marketed and labeled by Colavita and other olive oil companies as "extra virgin olive oil" and are sold to millions of consumers in the state of Florida, including Plaintiff.

35.     The researchers employed standardized olive oil testing methodologies for determining whether products meet the extra virgin olive oil grade:

| IOC/USDA ANALYSIS | DETERMINATIONS | INDICATORS | ANALYSES | EXTRA VIRGIN STANDARDS |
|---|---|---|---|---|
| Free Fatty Acids (FFA) | Free fatty acids are formed by the hydrolysis of the triacylglycerols during extraction, processing, and storage. | An elevated level of free fatty acid indicates hydrolyzed, oxidized and/or poor quality oil. | Analytical titration (AOCS Ca 5a-40) | Under % as oleic acid Limit ≤ 0.8 |
| Peroxide Value (PV) | Peroxides are primary oxidation products that are formed when oils are exposed to oxygen, producing undesirable flavors and odors. | An elevated level of peroxides indicates oxidized and/or poor quality oil. | Analytical titration (AOCS Cd 8b-90) | Under mEq O₂/kg oil Limit ≤ 20 |
| UV Absorption (for conjugated double bonds) | Conjugated double bonds are formed from natural (non-enzymatic) oxidation or acceleration in oils upon oxidation. | An elevated level of UV absorbance indicates oxidized and/or poor quality oil. | UV spectrophotometry (AOCS Ch 5-91) | Under K₂₃₂; Limits for K₂₃₂, K₂₇₀ and ΔK: ≤ 2.50; ≤ 0.22; ≤ 0.01 |
| Stigmastadiene | Stigmastadienes are produced by thermal dehydration of beta-sitosterol, a natural sterol found in virgin olive oils. | An elevated level of stigmastadiene indicates adulteration with refined oil. | Gas chromatography (GC) (IOC COI/T.20/Doc No. 11-2001) | Under mg/kg oil; IOC limit ≤ 0.10; USDA limit ≤ 0.15 |
| Fatty Acid Profile (FAP) | Fatty acids constitute the principal components of fats (esters) of glycerol. Fatty acid profiles (FAP) are distinguished as markers between olive oils and some seed/nut oils. FAPs vary slightly depending on the varieties and growing region of olives. | Analysis of the fatty acid profile provides information on the authenticity of the olive oil or an indicator for adulteration with refined oils. | Gas chromatography (GC) (IOC COI/T.20/Doc No. 24-2001) | Under % of total fatty acids Limits See Appendix. |
| Sterols Profile | Sterols are minor constituents of oils and are distinguishable markers between olive oils and some seed/nut oils. | Analysis of sterols provides information on the purity of the olive oil and order for adulteration with refined seed/nut oils, although some sterol values may exceed IOC limits due to cross contamination. | Gas chromatography (GC) (IOC COI/T.20/Doc No. 10-2001) | Under % of total sterols (mg/kg) Limits See Appendix. |
| Sensory (Organoleptic) | Sensory refers to taste, odor and mouthfeel. | Sensory attributes can help identify adulteration of an oil, quality oxidized, and/or adulterated with other oils. | IOC recognized panel of 8-12 people evaluate oils for sensory characteristics (IOC COI/T.20/Doc No. 15/Rev. 2-2007; IOC COI/T.15/NC No. 3/Rev. 4, 11-2009) | Panel must have median of defects = 0 and median of the fruity attribute > 0 |

Hydrolyzed: internal chemical changes (hydrolysis) have been broken down via addition of water.

Oxidized: means oil that has become rancid and moved through oxidation, a chemical reaction that is promoted by heat, light and/or air.

Refined: means oil or extra virgin oils that are solvent extracted, thermally deodorized and bleached.

Poor quality: oils that were made from poor quality olives, improperly processed, and/or improperly stored after processing.

11

36.     The UC Davis study also performed more-advanced techniques for determining

whether products meet the extra virgin olive oil grade:



37.     Colavitas' products do not meet the extra virgin olive oil standards, as the UC

Davis study has revealed:

Tests indicate that imported "extra virgin" olive oil often fails international and USDA standards
UC Davis Olive Center, July 2010
Table 3. Chemistry and sensory data provided by Australian Oils Research Laboratory

| Brand | | PV | K232 | K268 | ΔK | FFA | Stigma | Poly | PPP | DAGs | Sensory |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Extra Virgin Standards | | <20 | <2.50 | <0.22 | <0.01 | <0.8 | <0.10 | N/A | <1.1 | >40 | |
| Colavita | SAC | 8 | 1.97 | 0.14 | <0.003 | 0.24 | <0.03 | 268 | 13.4 | 72.2 | EXTRA VIRGIN |
| | SF | 11 | 2.19 | 0.15 | <0.003 | 0.57 | <0.03 | 189 | 12.8 | 36.7 | VIRGIN |
| | LA | 16 | 2.88 | 0.25 | 0.01 | 0.77 | <0.03 | 50 | 3.31 | 29.6 | VIRGIN |

12

38.     Despite this, Colavita nonetheless markets, advertises, and labels its product as "extra virgin" olive oil when this claim is patently false.

*Colavitas' False, Unfair and Deceptive Advertising Claims*

*The Colavita Brand*

39.     Colavita sells Colavita Extra Virgin Olive Oil to American consumers, including consumers in the state of Florida.  Colavitas' marketing campaign to Florida consumers for this product also speaks for itself:



**COLAVITA®**
**Extra Virgin Olive Oil**
America's best-selling Italian Extra Virgin Olive Oil. Cold-pressed from the best fruit of the olive tree, it is the natural juice squeezed from Italian olives one day after the harvest. Unmatched for freshness and flavor, COLAVITA guarantees its product to be 100% Italian olive oil and properly labeled. A true Italian.

40.     Colavita seeks to dupe consumers in Florida into believing that Colavita is true grade extra virgin olive oil, when this product does not meet the "extra virgin" standard. Colavita has successfully achieved this ploy by causing Florida consumers, including Plaintiff, to purchase this falsely advertised product with the belief that the product actually meets the extra virgin olive oil grade, as advertised.

13

22

41.     Colavita knows that its Colavita Brand olive oil labeled as "Extra Virgin" does not meet the state, national or international standard for "extra virgin."

***Colavitas' Profit Motives for Labeling its Product as "Extra Virgin" and the Geo-Political and Economic Climate in Which Colavita Makes these False, Unfair and Deceptive Claims***

42.     Americans spend nearly a billion dollars a year consuming olive oil. Indeed, the United States is the world's third-largest consumer of olive oil, 99% percent of which comes from foreign producers like Colavita.

43.     In the last 20 years, the United States has become a worthy producer of olive oils. and especially extra virgin olive oils. Presuming that American consumers' pallets are unsophisticated, olive oil producers' worldwide took notice of American domestic olive oil production and in an effort to compete, many sophisticated foreign producers recognized that they could make greater profits if they utilized inferior ingredients. More importantly, foreign producers still continued to call their inferior grade olive oil products "extra virgin," when it was not true.

44.     To be sure, extra-virgin olive oil has earned the trust of consumers looking for better health and full-flavored oil. However, increased global competition tempts some producers to misrepresent their products in pursuit of profit, as has been done to American consumers. Consumers may think their EVOO is made using the best methods and ingredients possible, but it is actually counterfeit EVOO.

45.     Over the years, there have been media reports of deception in the olive oil business, where extra virgin olive oil was diluted and is considered counterfeit. Their dilution process with other olive oils makes detection of the adulteration difficult.

14

46.     These manufacturers and producers, including but not limited to Colavita, are well aware of what constitutes EVOO as they are regulated in countries outside of the United States.

47.     The methodology/process required to produce EVOO makes it impossible for the Colavita to sell the volume of true grade EVOO as Colavita claims they do.  As stated above, because many of the olives come from small farmers in places like Spain, it is sometimes logistically impossible to make extra virgin olive oil from these olives, given the time-sensitive and delicate processes that are necessary to make true grade extra virgin olive oil. Colavita uses the precious little true extra virgin olive oil for countries whose consumers have a longer history of consuming extra virgin olive oil and have a taste pallet that commands only their true high quality product.  While Colavita saves the "good stuff" for other consumer markets, such as European markets, Colavita sells Americans the sub-standard and rancid olive oil, mixing and manipulating the chemistry of the oil so that it, under a microscope, approximates (but falls far short of) true grade extra virgin olive oil.

48.     The same foreign producers that stand to profit from these misleading and deceptive trade practices are in control of the very agencies regulating the oil producers outside of the United States. As such, these agencies have been slow to react.

49.     In 1993, the FDA ordered a recall of Rubino U.S.A. Inc., (Cincinnati, Ohio) olive oils which were nothing more than canola oil.

50.     In 1997, the Canadian Food Inspection Agency began conducting tests on 100 oils that claimed to be 100% olive oil and in 1999 the CFIA concluded that 20 per cent of the oils were fake.

51.     In 2007, American supermarket chain ShopRite (United States) recalled certain olive oils after it was discovered that they were counterfeit.

52.     In March 2008, 400 Italian police officers conducted "Operation Golden Oil," arresting 23 people and confiscating 85 farms after an investigation revealed a large-scale scheme to reliable oils from other Mediterranean nations as Italian.

53.     In April 2008, another operation impounded seven olive oil plants and arrested 40 people in nine provinces of northern and southern Italy for adding chlorophyll to sunflower and soybean oil and selling it as extra virgin olive oil, both in Italy and abroad. 25,000 liters of the fake oil were seized and prevented from being exported.

54.     On December 22, 2008, the Guardia Civil in La Rioja (Spain) warned about the possible sale of adulterated olive oil in the area. This warning came after 550 liters of oil was found in a large container labeled "Astispumante 1510" in Rincón de Soto and after the theft of 1,750 liters of oil was reported in the area on December 18, 2008.

55.     The detection of counterfeit olive oils is often complicated with no single test that can accomplish the task. The two primary categories of testing are chemical and sensory.

56.     The accepted sensory standards require the oils have zero defects and greater than zero fruitiness. For years, trained olive oil tasters who have served on recognized sensory panels have reported that much of the olive oil sold in the United States as "extra virgin" does not meet this modest sensory standard.

57.     Money is at stake. Extra-virgin oil is marketed as a premium consumer product.

58.     At a Publix grocery store in Boca Raton, FL, a 750-milliliter bottle of Colavita Brand extra-virgin olive oil costs $17.99, while the a 500-milliliter bottle of virgin olive oil costs $8.99.

59.     As such, sophisticated producers are able to fool many of the chemical tests. However, the sensory tests are not easily fooled.

60.     While the misrepresentations concerning counterfeit EVOO is widespread and long standing, it was not until the researchers at UC Davis conducted extensive research on many brands, including but not limited to the Colavitas' brand, that the public eye was keyed into the deception.

61.     The UC Davis report is critical to unpacking the Colavitas' scheme.  What is really going on is that Colavita does not respect American consumer pallets for olive oil and are banking on the fact that Americans will be duped by the label of "extra virgin" without the ability for themselves to be able to taste that it is not.  The UC Davis report brought this advertising deception to light.

62.     Plaintiff seeks to end the Colavitas' scheme of selling fake extra virgin olive oil in the state of Florida.

## COUNT I

### For Violations of the Florida Deceptive and Unfair Trade Practices Act,
### Florida Statutes §§501.201, *et seq.*,
### On Behalf of Plaintiff and the Class

63.     Plaintiff realleges and incorporates by reference the allegations contained in the above referenced paragraphs as if fully set forth herein.

64.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq.* (the "Act").  The stated purpose of the Act is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.202(2).

65.     Plaintiff is a consumer as defined by Fla. Stat. §501.203.  Colavita Brand is a good within the meaning of the Act.

66.     Colavita is engaged in trade or commerce within the meaning of the Act.

67.     Fla. Stat. §501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

68.     Fla. Stat. §501.204(2) states that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to [section] 5(a)(1) of the Federal Trade Commission Act."  Colavitas' unfair and deceptive practices are likely to deceive – and have deceived – the consumer acting reasonably in the circumstances, and violate Fla. Stat. §500.04 and 21 U.S.C. §343.  Further, FTC rules and regulations require that Colavita have the same level of substantiation for its advertisements at the time they are made as it claimed in the advertisement.  Colavitas' claims lack reliable and competent proof.

69.     Colavita has violated the Act by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

70.     Plaintiff and the Class have been aggrieved by Colavitas' unfair and deceptive practices in that they paid for Colavita Brand and did not receive the benefit of their bargains.

71.     The damages suffered by Plaintiff and the Class were directly and proximately caused by the deceptive, misleading and unfair practices of Colavita, as more fully described herein.

18

72.     Pursuant to Fla. Stat. §501.211(1), Plaintiff and the Class seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of Colavita and for restitution and disgorgement.

73.     Additionally, pursuant to Fla. Stat. §§501.211(2) and 501.2105, Plaintiff and the Class make claims for damages, attorneys' fees and costs.

## COUNT II

### Breach of Express Warranty
### On Behalf of Plaintiff and the Class

74.     Plaintiff realleges and incorporate by reference the allegations contained in all preceding paragraphs, except for the paragraphs of Count I, which are not incorporated by reference, as if fully set forth herein.

75.     Plaintiff, and each member of the Class, formed a contract with Colavita at the time Plaintiff and the other members of the Class purchased Colavita Brand.  The terms of that contract include the promises and affirmations of fact made by Colavita on its product labels and through its marketing campaign, as described above.  This product labeling and advertising constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Colavita on the other.

76.     All conditions precedent to Colavitas' liability under this contract, including notice, have been performed by Plaintiff and the Class.

77.     Colavita breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing the products as advertised and described above.

19

28

78.     As a result of Colavitas' breach of its contract and warranties, Plaintiff and the Class have been damaged in the amount of the purchase price of the Colavita Brand they purchased.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment:

A.      Certifying the Class as requested herein, and appointing Plaintiff and Class Representative and Plaintiff's counsel as Class Counsel;

B.      Awarding Plaintiff and the proposed Class members damages;

C.      Awarding restitution and disgorgement of Colavitas' revenues to Plaintiff and the proposed Class members;

D.      Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Colavita from continuing the unlawful practices as set forth herein, and directing Colavita to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Colavita by means of any act or practice declared by this Court to be wrongful;

E.      Ordering Colavita to engage in a corrective advertising campaign;

F.      Awarding attorneys' fees and costs; and

G.      Providing such further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

20

DATED:  August 27, 2010

ROBBINS GELLER RUDMAN & DOWD LLP
STUART A. DAVIDSON
Florida Bar No. 084824
CULLIN A. O'BRIEN
Florida Bar No. 597341
MARK DEARMAN
Florida Bar No. 982407


_____
Cullin A. O'Brien

120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
cobrien@rgrdlaw.com
mdearman@rgrdlaw.com

THE GERSON LAW FIRM
STEVEN GERSON
8551 West Sunrise Blvd., Suite 300
Plantation, FL  33322
Telephone:  954/915-8888
954/915-9191 (fax)
sgerson@gersonlawfirm.com

Attorneys for Plaintiff and the Class

21

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

JOSEPH NACHIO, Individually and on Behalf
of All Others Similarly Situated,

        Plaintiff,

vs.

AMERICAN RICE INC., POMPEIAN INC.,
and SALOV NORTH AMERICA
CORPORATION,

        Defendants.

_____/

Case No.:    **10  33154**

CLASS REPRESENTATION

**13**

JURY TRIAL DEMANDED

A TRUE COPY

AUG 1 3 2010

HOWARD C. FORMAN
CLERK OF CIRCUIT COURT
BROWARD COUNTY, FL

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Joseph Nachio ("Plaintiff"), brings this action on behalf of himself and all others similarly situated against defendants American Rice Inc. ("American Rice"), Pompeian Inc. ("Pompeian"), and Salov North America Corporation ("Salov"), and alleges:

## JURISDICTION AND VENUE

1.      This action is brought as a class action pursuant to Florida Rule of Civil Procedure 1.220.

2.      The damages suffered and sought to be recovered herein total, in the aggregate, in excess of the minimum jurisdictional limits of this Court.  Plaintiff's individual claims do not exceed the sum or value of $75,000.00.

3.      Venue is proper in Broward County, Florida because the causes of action asserted herein occurred and/or accrued, among other places, in Broward County, Florida.  Venue is also appropriate in this Court because Defendants conduct substantial business in Broward County and have targeted consumers to purchase their products and has advertised in various media in Broward County.

4.      This action is not removable pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332 (2005), pursuant to *Cappuccitti v. DirecTV, Inc.*, No. 09-14107, 2010 WL 2803093, at *5 (11th Cir. July 19, 2010).

## NATURE OF THE ACTION

5.      This is a consumer class action on behalf of purchasers of Defendants' products that are falsely and deceptively labeled as "extra virgin olive oil" ("EVOO"), which is the highest and most expensive grade for olive oil product.  Defendants market and sell for a substantial premium their products as being "extra virgin olive oil" when the products clearly do not meet or warrant this "extra virgin" olive oil product grade or the price premium for which they are sold.

2

32

6.     The International Olive Counsel ("IOC"), the United States Department of Agriculture ("USDA"), and the state of California, the United States' largest domestic olive oil producer, have delineated specific standards for the "extra virgin olive oil" grade.  Although they are well aware of these standards, the Defendants do not meet these standards for their products, including the "organoleptic test" (herein referred to as "sensory test").[1]

7.     Indeed, the University of California at Davis ("UC Davis") recently conducted a comprehensive study delineating exactly how the Defendants' products do not meet these standards (the "Davis Study").  Under the Davis Study, the Defendants' products, which were advertised, marketed and sold for a premium as "extra virgin olive oil," tested at lower grades of olive oil.

8.     Upon information and belief, these same products tested in the Davis Study are sold to consumers throughout the state of Florida.  Given the time-sensitive and fragile logistic processes involved in mass producing true extra virgin olive oil, the Defendants cannot produce nearly the quantities of extra virgin olive oil they claim to sell into the United States.  Indeed, the Defendants do not even bother sending Americans true grade "extra virgin olive oil."  The Defendants use the precious little true extra virgin olive oil for sale to consumers in countries that have a longer history of consuming extra virgin olive oil and a taste pallet that commands only this true high quality product.  The Defendants do not respect the American olive oil taste pallet as a whole and bank on the fact that Americans cannot discern between rancid or adulterated olive oil and true extra virgin olive oil.

---

[1]     Since 1948, the USDA regulated olive oil grades and utilized chemical and sensory standards. In light of the volumes of olive oil imported into the United States, on October 25, 2010, the USDA will incorporate many of the IOC regulations.

3

9.      To further this advertizing deception, the Defendants manipulate the chemistry of their olive oil and synthetically attempt to reach chemical balances that approximate what real "extra virgin olive oil" might look light underneath a microscope.  But the Defendants cannot fake all the indicators of what true extra virgin olive oil really is, including the sensory test, which is exactly what the Davis Study revealed.

10.      Plaintiff, like hundreds of thousands, if not millions, of other Floridians have been duped by the Defendants' false, deceptive and unfair marketing campaign of their purportedly "extra virgin olive oil."  In short, Plaintiff and the class have not received the benefit of their bargains as a result of Defendants' false, deceptive and unfair marketing campaign, including Defendants' product labels.  Plaintiff and the class have sought to purchase real "extra virgin olive oil" and have instead received rancid or adulterated olive oil.  And, indeed, Plaintiff and the class have paid a premium price on the fake "extra virgin olive oil" sold to them by Defendants.

11.      In this action, Plaintiff seeks to recover the benefit of the bargain for himself and the class and to enjoin the Defendants from continuing with their false, deceptive and unfair marketing campaign of products that do not meet the "extra virgin olive oil" standard as advertised.

## PARTIES

12.      At all times relevant to this matter, Plaintiff Joseph Nachio resided and continues to reside in this County.  During the class period, Plaintiff was exposed to and saw Defendants' advertising claims, purchased Pompeian Extra Virgin Olive Oil (also referred to herein as "Pompeian Brand"), Bertolli Extra Virgin Olive Oil (also referred to herein as "Bertolli Brand"), and Filippo Berio Extra Virgin Olive Oil (also referred to herein as "Filippo Berio Brand"), and suffered injury in fact and lost money because of the unfair and deceptive trade practices described herein.  Plaintiff did not receive the benefit of his bargain in each purchase of

4

Pompeian Brand, Bertolli Brand, and Filippo Berio Brand. Plaintiff further paid a price premium for each purchase of Pompeian Brand, Bertolli Brand, and Filippo Berio Brand.

13.     Defendant American Rice is a wholly owned subsidiary of Groupo SOS.  Group SOS is a leading Spanish quoted food company, and the sales leader in the segments it operates in edible oils, with the Bertolli Brand being the strongest selling olive oil in the world.  American Rice is incorporated in the State of Delaware and headquartered in Houston, Texas.  American Rice promotes markets, distributes and sells Bertolli Extra Virgin Olive Oil to thousands of consumers in the State of Florida, including Broward County, Florida.  Upon information and belief, Group SOS manufacturers Bertolli Brand olive oil labeled as "Extra Virgin" and imports it to the United States where its operational unit, American Rice, markets, distributes, and sells the oil in the United States.  The Bertolli Brand commands 40 percent of the U.S. market.

14.     Defendant Pompeian is incorporated in Maryland and is headquartered in Baltimore.  Defendant Pompeian promotes markets, distributes and sells Pompeian Extra Virgin Olive Oil to thousands of consumers in the State of Florida, including Broward County, Florida. Pompeian is a jointly held entity with Spanish and Moroccan owners.  Pompeian imports a significant share of the EVOO consumed in the United States.

15.     Defendant Salov is incorporated in New York and headquartered in Lyndhurst, New Jersey.  Defendant Salov promotes markets, distributes and sells Filippo Berio Brand olive oil labeled as "Extra Virgin" to thousands of consumers in the State of Florida, including Broward County, Florida. Defendant Salov is a wholly owned subsidiary of Salov S.P.A and claims 20% of the world's EVOO market.

5

## CLASS REPRESENTATION ALLEGATIONS

16.      Plaintiff brings this lawsuit on behalf of himself and the proposed Class members under Rules 1.220(b)(2) and (b)(3) of the Florida Rules of Civil Procedure.   The proposed Class consists of:

> *All persons who purchased either Bertolli, Filippo Berio, or Pompeian brand*
> *products labeled as "extra virgin" olive oil in the State of Florida.*

17.      Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.   Specifically excluded from the proposed Class are the Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by the Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with the Defendants and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

18.      *Numerosity.*   The members of the Class are so numerous that their individual joinder is impracticable.   Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains many thousands of members.   The precise number of Class members is unknown to Plaintiff.   The true number of Class members is known by the Defendants, their distributors and retailers, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

19.      *Existence and Predominance of Common Questions of Law and Fact.* Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.   These common legal and factual questions include, but are not limited to, the following:

6

(a)     whether Defendants had adequate substantiation for their claims prior to making them;

(b)     whether the claims discussed above are true, or are misleading, or reasonably likely to deceive;

(c)     whether Defendants' alleged conduct violates public policy;

(d)     whether the alleged conduct constitutes violations of the laws asserted herein;

(e)     whether Defendants engaged in false or deceptive advertising;

(f)     whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss;

(g)     whether Plaintiff and Class members are entitled to declaratory and injunctive relief.

20.     *Typicality.* Plaintiff's claims are typical of the claims of the members of the Class in that the Defendants were unjustly enriched as a result of Plaintiff's and the Class' respective purchases of EVOO.

21.     *Adequacy of Representation.* Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel highly experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

22.     *Superiority.* A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendants. It would thus be

7

virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

23.    In the alternative, the Class may also be certified because:

(a)    the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendants;

(b)    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)    Defendants have acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

24.    The claims asserted herein are applicable to all customers throughout the State of Florida who purchased EVOO. Adequate notice can be given to Class members directly using

information maintained in Defendants' records, the records of third parties, or through notice by publication.

25.     Damages may be calculated, in part, from the sales information maintained in Defendants' records, or the records of third parties, so that the cost of administering a recovery for the Class can be minimized. However, the precise amount of damages available to Plaintiff and the other members of the Class is not a barrier to class certification.

26.     Unless a class is certified, Defendants will retain monies received as a result of their conduct that was taken from Plaintiff and proposed Class members. Unless a class-wide injunction is issued, Defendants will continue to commit the violations alleged, and the members of the Class will continue to be misled.

SUBSTANTIVE ALLEGATIONS

*Extra Virgin Olive Oil*

27.     American Consumers spend an amazing $700 million a year on olive oil labeled as "extra virgin" not realizing that many of these products, including those purchased from Defendants, are not worthy of the benefit of the bargain, much less the premium prices attached to the products.

28.     At the pinnacle of the olive oil industry sits extra-virgin olive oil — the gold standard. The term "extra virgin" is defined by the International Olive Counsel ("IOC"), the USDA, and the state of California, the United State's largest domestic olive oil producer.

29.     Since each of the Defendants are required to comply with the IOC, the USDA, and the laws of the state of California, in those respective jurisdictions, Defendants clearly know what the term "extra virgin" means.

9

30.     Specifically, the IOC defines "extra virgin" olive oil as:   Extra virgin olive oil: virgin olive oil which has a free acidity, expressed as oleic acid, of not more than 0.8 grams per 100 grams, and the other characteristics of which correspond to those fixed for this category in this standard.  The IOC defines a sensory taster as an individual who is specialized in the sensory analysis of a specific product and has a basic understanding of the preparation of the product and market preferences.  The IOC utilizes a protocol for its sensory testing which includes, but is not limited to, perception, sensation, and sensitivity.

31.     Since 1948, the USDA has regulated olive oil grades and utilized both chemical and sensory standards to determine quality.  Currently, quality is rated on a scale of A, which has the characteristics of what the IOC and others refer to as EVOO, B, and C.  In light of the volumes of olive oil imported into the United States, on October 25, 2010, the USDA will incorporate many of the IOC regulations into an updated set of voluntary standards.

32.     The new USDA standards define "U.S. Extra Virgin Olive Oil" as: virgin olive oil which has excellent flavor and odor (median of defects equal to zero and median of fruitiness greater than zero) and a free fatty acid content, expressed as oleic acid, of not more than 0.8 grams per 100 grams, and meets the additional requirements as outlined in §52.1539, as appropriate.   Section 52.1539 sets forth the criteria to ascertain the grade of the oil using both chemical and sensory standards.

33.     The state of California defines "extra virgin" olive oil as:

Extra virgin olive oil means virgin olive oil which has a free acidity, expressed as oleic acid, of not more than 0.8 grams per 100 grams oil, has a peroxide value of not more than 20 milliequivalent peroxide oxygen per kilogram oil and would meet the sensory standards of extra virgin olive oil as determined by a taste panel certified by the International Olive Council, or, if the International Olive Council ceases to certify taste panels, would meet the sensory standards of a taste panel that is operated by the University of California or California State University according to guidelines adopted by the International Olive Council as of 2007.

10

34.     Practically speaking, only olives picked fresh and slightly unripe, pressed within 24 hours of harvest, and carefully monitored will become extra virgin olive oil within each of the aforementioned standards.   Otherwise, the oil will be among the lower grades of "virgin," "pure," or "light" olive oil.   Indeed, the timing and processing olives to make real extra virgin olive oil is delicate and time-sensitive.   And logistically, this is a problem for companies that use olives from small-scale olive farmers in places like Spain.   Harvesting, collecting, and processing olives from many small-scale olive ranches can inhibit the production of true grade extra virgin olive oil.

***Defendants' Products Do Not Meet the "Extra Virgin" Olive Oil Standard***

35.     In early 2010, olive oil researchers at UC Davis conducted a study of Defendants' products, as well as the products of other olive oil companies.   The UC Davis study examined olive oil products that were marketed and labeled by Defendants and other olive oil companies as "extra virgin olive oil" to American consumers in retail stores.   These same products examined by the UC Davis study are, upon information and belief, marketed and labeled by Defendants and other olive oil companies as "extra virgin olive oil" and are sold to millions of consumers in the state of Florida, including Plaintiff.

11

41

36.    The researchers employed standardized olive oil testing methodologies for determining whether products meet the extra virgin olive oil grade:

| IOC/USDA ANALYSIS | DETERMINATIONS | INDICATORS* | ANALYSES | EXTRA VIRGIN STANDARDS |
|---|---|---|---|---|
| Free Fatty Acids (FFA) | Free fatty acids are formed by the hydrolysis of the triacylglycerols in oils during extraction, processing, and storage. | An elevated level of free fatty acid indicates hydrolyzed, oxidized and/or poor-quality oil. | Analytical titration (AOCS Cd 5a-40). | Units: % as oleic acid. Limit: ≤ 0.8. |
| Peroxide Value (PV) | Peroxides are primary oxidation products that are formed when oils are exposed to oxygen, producing undesirable flavors and odors. | An elevated level of peroxides indicates oxidized and/or poor-quality oil. | Analytical titration (AOCS Cd 8b-90). | Units: in Eq O₂/kg oil. Limit: ≤ 20. |
| UV Absorption (for conjugated double bonds) | Conjugated double bonds are formed from natural nonconjugated unsaturation in oils upon oxidation. | An elevated level of UV absorbance indicates oxidized and/or poor quality oil. | UV spectrophotometry (AOCS Ch 5-91). | Units: K¹ᶜᵐ. Limits for K232, K268 and ΔK ≤ 2.50, ≤ 0.22, and ≤ 0.01. |
| Stigmastadiene | Stigmastadienes are produced by thermal dehydration of beta-sitosterol, a natural sterol found in virgin olive oils. | An elevated level of stigmastadienes indicates adulteration with refined oil. | Gas chromatography (GC) (IOC COI/T.20/Doc No. 11-2001). | Units: mg/kg oil. IOC limit ≤ 0.10 USDA limit ≤ 0.15. |
| Fatty Acid Profile (FAP) | Fatty acids constitute the principal component of fats (saturated or unsaturated). Fatty acid profiles (FAP) are distinguishable markers between olive oils and some seed/nut oils (FAPs vary slightly depending on the varieties and growing region of olives). | Analysis of the fatty acid profile provides information on the authenticity of the olive oil; an indicator for adulteration with refined oils. | Gas chromatography (GC) (IOC COI/T.20/Doc No. 24-2001). | Units: % of total fatty acids. Limits: See Appendix. |
| Sterols Profile | Sterols are minor constituents of oils and are distinguishable markers between olive oils and some seed/nut oils. | Analysis of sterols provides information on the purity of the olive oil; an indicator for adulteration with refined oil/nut oils, although some sterol values may exceed IOC limits due to climate and olive varietal. | Gas chromatography (GC) (IOC COI/T.20/Doc No. 10-2001). | Units: % of total sterols (mg/kg). Limits: See Appendix. |
| Sensory (Organoleptic) | Sensory refers to taste, odor and mouthfeel. | Sensory assessment can help identify oils that are of poor-quality, oxidized, and/or adulterated with other oils. | IOC-recognized panel of 8–12 people evaluates oils for sensory characteristics (IOC COI/T.20/Doc No. 15/Rev 2-2007, IOC COI/T.15/NC No.3/Rev. 4-11-2009). | Panel must find median of defects = 0 and median of the fruity attribute > 0. |

*Hydrolyzed means oils in which triacylglycerols have been broken down via addition of water.
Oxidized means oils that have become stale and rancid through oxidation, a chemical reaction that is promoted by heat, light, and/or age.
Refined means cheaper, lower-grade oils that are solvent extracted, thermally deodorized and bleached.
Poor-quality means oils that were made from poor-quality olives, improperly processed, and/or improperly stored after processing.

12

37.    The UC Davis study also performed more-advanced techniques for determining

whether products meet the extra virgin olive oil grade:

| OTHER ANALYSIS | DETERMINATIONS | INDICATORS* | ANALYSIS | EXTRA VIRGIN STANDARDS |
|---|---|---|---|---|
| Total Polyphenol Content | Polyphenols are important antioxidants that inhibit oxidation and improve the shelf-life of olive oils. | Polyphenol content decreases with prolonged storage, but because polyphenols are influenced by varietal, horticultural, and processing variables the content does not necessarily indicate oil authenticity or quality. | Modified Gutfinger (1981) method. Gutfinger, T. (1981). "Polyphenols in olive oils." Journal of the American Oil Chemists' Society 62: 895–899. | Units: mg caffeic acid/kg oil. Limit: Extra virgin standards have not been established. |
| Triacylglycerols (TAGs) | Triacylglycerols are the principal components (98%) of olive oil, consisting of an ester of three fatty acids and glycerol. | The triacylglycerols method is still being evaluated as an indicator of olive-oil purity. | Gas chromatography (GC) DGF Standard method C-VI 1(b). | Units: % of total triacylglycerols. Limit: Extra virgin standards have not been established. |
| 1,2-Diacylglycerol Content (DAGs) | During the breakdown of triacylglycerols, diacylglycerols are formed. Fresh extra-virgin olive oil contains a high proportion of 1,2-diacylglycerols to 1,2- and 1,3-diacylglycerols, while olive oil from poor-quality fruits and refined olive oil have elevated levels of 1,3-diacylglycerols. | The ratio of 1,2-diacylglycerols to 1,2- and 1,3-diacylglycerols is an indicator for oil that is hydrolyzed, oxidized, of poor quality, and/or adulterated with refined oil. | Gas chromatography (GC) DGF Standard Method C-VI 16(08) – ISO 29822:2009. | Units: % total 1,2- and 1,3-diacylglycerols. Australian Olive Association (AOA) limit ≥ 40. |
| Pyropheophytins (PPP) | Chlorophyll pigments break down to pheophytins and then pyropheophytins upon thermal degradation of olive oil. | An elevated level of pyropheophytins is an indicator for oil that is oxidized and/or adulterated with refined oil. | High-performance liquid chromatography (HPLC) DGF Standard Method C-VI-15(06) – ISO 29841:2009. | Units: % total pheophytins. Australian Olive Association (AOA) limit ≤ 15. |

*Hydrolyzed means oils in which triacylglycerols have been broken down via addition of water.
Oxidized means oils that have become rancid through oxidation, a chemical reaction that is promoted by heat, light, and/or age.
Refined means cheaper, lower-grade oils that are solvent extracted, thermally deodorized and bleached.
Poor quality means oils that were (1) made from poor-quality olives, (2) improperly processed, and/or (3) improperly stored after processing.

38.    Defendants' products do not meet the extra virgin olive oil standards, as the UC

Davis study has revealed:

**Tests indicate that imported "extra virgin" olive oil often fails international and USDA standards**
**UC Davis Olive Center, July 2010**
**Table 3. Chemistry and sensory data provided by Australian Oils Research Laboratory**

| Brand | | PV | K232 | K268 | ΔK | FFA | Stigma | Poly | PPP | DAGs | Sensory |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Filippo Berio | SAC | 11 | 2.46 | 0.18 | <0.003 | 0.30 | <0.03 | 200 | 10.3 | 42.2 | EXTRA VIRGIN |
| | SF | 12 | 2.18 | 0.14 | <0.003 | 0.37 | <0.03 | 212 | 12.0 | 42.7 | VIRGIN |
| | IA | 11 | 2.12 | 0.15 | <0.003 | 0.35 | <0.03 | 247 | 12.7 | 42.0 | VIRGIN |
| Bertolli | SAC | 9 | 2.29 | 0.19 | <0.003 | 0.41 | <0.03 | 195 | 17.8 | 38.1 | VIRGIN |
| | SF | 9 | 2.34 | 0.16 | <0.003 | 0.38 | <0.03 | 246 | 14.3 | 39.2 | VIRGIN |
| | IA | 12 | 2.42 | 0.17 | <0.003 | 0.32 | <0.03 | 199 | 20.8 | 43.6 | VIRGIN |
| Pompeian | SAC | 11 | 2.50 | 0.19 | <0.003 | 0.59 | <0.03 | 132 | 12.1 | 38.5 | VIRGIN |
| | SF | 13 | 2.60 | 0.16 | <0.003 | 0.51 | <0.03 | 111 | 10.5 | 31.5 | VIRGIN |
| | IA | 13 | 2.56 | 0.17 | <0.003 | 0.49 | <0.03 | 188 | 16.3 | 35.9 | VIRGIN |

13

39.     Despite this, the Defendants nonetheless market, advertise, and label their products when this claim is patently false.

*Defendants' False, Unfair and Deceptive Advertising Claims*

*Defendant American Rice – the Bertolli Brand*

40.     Defendant American Rice sells Bertolli Brand olive oil labeled as "Extra Virgin" to American consumers, including consumers in the state of Florida.   Defendant American Rice's marketing campaign to Florida consumers for this product speaks for itself:



41.     Defendant American Rice seeks to dupe consumers in Florida into believing that Bertolli Brand is true grade extra virgin olive oil, when this product does not meet the "extra virgin" standard. Defendant American Rice has successfully achieved this ploy by causing Florida consumers, including Plaintiff, to purchase this falsely advertised product with the belief that the product actually met the extra virgin olive oil grade, as advertised.

42.     Defendant American Rice knows that its Bertolli Brand olive oil labeled as "Extra Virgin" does not meet the state, national or international standard for "extra virgin."

14

44

*Defendant Pompeian – the Pompeian Brand*

43.     Defendant Pompeian sells Pompeian Extra Virgin Olive Oil to American consumers, including consumers in the state of Florida.    Defendant Pompeian's marketing campaign to Florida consumers for this product also speaks for itself:



**OLIVE OILS**
**Extra Virgin Olive Oil**

Only the Mediterranean's finest olives are selected for Pompeian Extra Virgin Olive Oil. Produced by the first pressing of these remarkable olives though the centuries-old cold pressing process, Pompeian Extra Virgin Olive Oil is extremely low in acidity, which accounts for its robust taste and heady fragrance. To fully appreciate the nuances of its flavor, you'll especially enjoy it in dressings, salads, vinaigrettes or as a table condiment for dipping bread or crudite.

**NAOOA Seal quality assurance**
The North American Olive Oil Association has created a special seal program. Pompeian is the first brand of olive oil to carry this seal. To learn more about this quality assurance, select the link in the left navigation bar.



44.     Defendant Pompeian seeks to dupe consumers in Florida into believing that Pompeian is true grade extra virgin olive oil, when this product does not meet the "extra virgin" standard. Defendant Pompeian has successfully achieved this ploy by causing Florida consumers, including Plaintiff, to purchase this falsely advertised product with the belief that the product actually met the extra virgin olive oil grade, as advertised.

15

45.     Defendant  Pompeian knows that its Pompeian Brand olive oil labeled as "Extra Virgin" does not meet the state, national or international standard for "extra virgin."

### *Defendant Salov – the Filippo Berio Brand*

46.     Defendant Salov sells Filippo Berio Brand olive oil labeled as "Extra Virgin" to American consumers, including consumers in the state of Florida.  Like the other defendants, defendant Salov's marketing campaign to Florida consumers for this product speaks for itself:



**Filippo Berio Extra Virgin Olive Oil**
*For dressings, marinades and dip for breads*

This fine aromatic oil is made from the first cold-pressing of the finest olives, and is distinguished by its full flavor, low acidity, and deep greenish-gold color. Filippo Berio Extra Virgin Olive Oil enhances the flavor of salad dressings, sauces, and marinades; is a wonderful finish to vegetables, rice dishes and soups and is perfect for dipping bread and seafood such as lobster. Try it tonight in Chicken Paillard Salad with Tomatoes and Basil.

Because of its distinctive, full flavor, Extra Virgin Olive Oil is extremely popular for home "olive oil tastings," a social phenomenon quickly gaining popularity with food enthusiasts — almost as popular as wine tastings in many circles.

It's fun and easy to host your own tasting — click here for some basic guidelines.

Our Extra Virgin Olive Oil is also available as an easy-to-use and convenient spray.

47.     Defendant Salov seeks to dupe consumers in Florida into believing that Filippo Berio Brand is true grade extra virgin olive oil, when this product does not meet the "extra

16

virgin" standard.  Defendant Salov has successfully achieved this ploy by causing Florida

consumers, including Plaintiff, to purchase this falsely advertised product with the belief that the

product actually met the extra virgin olive oil grade, as advertised.

48.     Defendant Salov knows that its Filippo Berio Brand olive oil labeled as "Extra

Virgin" does not meet the state, national or international standard for "extra virgin."

***Defendants' Profit Motives for Labeling their Products as "Extra Virgin" and the Geo-
Political and Economic Climate in Which Defendants Make these False, Unfair and Deceptive
Claims***

49.     Americans spend nearly a billion dollars a year consuming olive oil.  Indeed, the

United States is the world's third-largest consumer of olive oil, 99% percent of which comes

from foreign producers like Defendants.

50.     In the last 20 years, the United States has become a worthy producer of olive oils,

and especially extra virgin olive oils.   Presuming that American consumers' pallets are

unsophisticated, olive oil producers' worldwide took notice of American domestic olive oil

production and in an effort to compete, many sophisticated foreign producers recognized that

they could make greater profits if they utilized inferior ingredients.  More importantly, foreign

producers still continued to call their inferior grade olive oil products "extra virgin," when it was

not true.

51.     To be sure, extra-virgin olive oil has earned the trust of consumers looking for

better health and full-flavored oil.   However, increased global competition tempts some

producers to misrepresent their products in pursuit of profit, as has been done to American

consumers.  Consumers may think their EVOO is made using the best methods and ingredients

possible, but it is actually counterfeit EVOO.

17

52.     Over the years, there have been media reports of deception in the olive oil business, where extra virgin olive oil was diluted and is considered counterfeit.  This dilution process with other olive oils makes detection of the adulteration difficult.

53.     These manufacturers and producers, including but not limited to Defendants, are well aware of what constitutes EVOO as they are regulated in countries outside of the United States.

54.     The methodology/process required to produce EVOO makes it impossible for the Defendants to sell the volume of EVOO they do.  As stated above, because many of the olives come from small farmers in places like Spain, it is sometimes logistically impossible to make extra virgin olive oil from these olives, given the time-sensitive and delicate processes that are necessary to make true grade extra virgin olive oil. The Defendants use the precious little true extra virgin olive oil for countries whose consumers have a longer history of consuming extra virgin olive oil and have a taste pallet that commands only this true high quality product.  While the Defendants save the "good stuff" for other consumer markets, such as European markets, the Defendants sell Americans the sub-standard and rancid olive oil, mixing and manipulating the chemistry of the oil so that it, under a microscope, approximates (but falls far short of) true grade olive oil.

55.     The same foreign producers that stand to profit from these misleading and deceptive trade practices are in control of the very agencies regulating the oil producers outside of the United States. As such, these agencies have been slow to react.

56.     In 1993, the FDA ordered a recall of Rubino U.S.A. Inc., (Cincinnati, Ohio) olive oils which were nothing more than canola oil.

18

48

57.    In 1997, the Canadian Food Inspection Agency began conducting tests on 100 oils that claimed to be 100% olive oil and in 1999 the CFIA concluded that 20 per cent of the oils were fake.

58.    In 2007, American supermarket chain ShopRite (United States) recalled certain olive oils after it was discovered that they were counterfeit.

59.    In March 2008, 400 Italian police officers conducted "Operation Golden Oil," arresting 23 people and confiscating 85 farms after an investigation revealed a large-scale scheme to reliable oils from other Mediterranean nations as Italian.

60.    In April 2008, another operation impounded seven olive oil plants and arrested 40 people in nine provinces of northern and southern Italy for adding chlorophyll to sunflower and soybean oil and selling it as extra virgin olive oil, both in Italy and abroad. 25,000 liters of the fake oil were seized and prevented from being exported.

61.    On December 22, 2008, the Guardia Civil in La Rioja (Spain) warned about the possible sale of adulterated olive oil in the area. This warning came after 550 liters of oil was found in a large container labeled "Astispumante 1510" in Rincón de Soto and after the theft of 1,750 liters of oil was reported in the area on December 18, 2008.

62.    The detection of counterfeit olive oils is often complicated with no single test that can accomplish the task.  The two primary categories of testing are chemical and sensory.

63.    The accepted sensory standards require the oils have zero defects and greater than zero fruitiness.  For years, trained olive oil tasters who have served on recognized sensory panels have reported that much of the olive oil sold in the United States as "extra virgin" does not meet this modest sensory standard.

64.    Money is at stake.  Extra-virgin oil is marketed as a premium consumer product.

19

49

65.     At a Publix grocery store in Boca Raton, FL, a 750-milliliter bottle of Bertolli Brand extra-virgin olive oil costs $9.99, while the same-size bottle of extra light olive oil costs $8.99.

66.     In addition, at the same Publix store, a 750-milliliter bottle of Filippio Berrio Brand extra-virgin olive oil costs $8.99, while the same size bottle of extra light olive oil costs $5.99.

67.     Further, at the same Publix store, a 946-milliliter bottle of Pompeian Brand extra-virgin olive oil costs $11.89, while the same size bottle of extra light olive oil costs $10.99.

68.     As such, sophisticated producers are able to fool many of the chemical tests. However, the sensory tests are not easily fooled.

69.     While the misrepresentations concerning counterfeit EVOO is widespread and long standing, it was not until the researchers at UC Davis conducted extensive research on many brands, including but not limited to the Defendants' brands, that the public eye was keyed into the deception.

70.     The UC Davis report is critical to unpacking the Defendants' scheme.  What is really going on is that the Defendants do not respect American consumer pallets for olive oil and are banking on the fact that Americans will be duped by the label of "extra virgin" without the ability for themselves to be able to taste that it is not.  The UC Davis report brought this advertising deception to light.

71.     Plaintiff seeks to end the Defendants' scheme of selling fake extra virgin olive oil in the state of Florida.

20

## COUNT I

### For Violations of the Florida Deceptive and Unfair Trade Practices Act,
### Florida Statutes §§501.201, *et seq.*,
### On Behalf of Plaintiff and the Class

72.     Plaintiff realleges and incorporates by reference the allegations contained in the above referenced paragraphs as if fully set forth herein.

73.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq.* (the "Act").  The stated purpose of the Act is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.202(2).

74.     Plaintiff is a consumer as defined by Fla. Stat. §501.203.   Pompeian Brand, Bertolli Brand, and Filippo Berio Brand are goods within the meaning of the Act.

75.     Defendants are engaged in trade or commerce within the meaning of the Act.

76.     Fla. Stat. §501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

77.     Fla. Stat. §501.204(2) states that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to [section] 5(a)(1) of the Federal Trade Commission Act."   Defendants' unfair and deceptive practices are likely to deceive – and have deceived – the consumer acting reasonably in the circumstances, and violate Fla. Stat. §500.04 and 21 U.S.C. §343.   Further, FTC rules and regulations require that Defendants have the same level of substantiation for its advertisements at the time they are made as it claimed in the advertisement.   Defendants' claims lack reliable and competent proof.

78.     Defendants have violated the Act by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

79.     Plaintiff and the Class have been aggrieved by Defendants' unfair and deceptive practices in that they paid for Pompeian Brand, Bertolli Brand, and Filippo Berio Brand and did not receive the benefit of their bargains.

80.     The damages suffered by Plaintiff and the Class were directly and proximately caused by the deceptive, misleading and unfair practices of Defendants, as more fully described herein.

81.     Pursuant to Fla. Stat. §501.211(1), Plaintiff and the Class seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

82.     Additionally, pursuant to Fla. Stat. §§501.211(2) and 501.2105, Plaintiff and the Class make claims for damages, attorneys' fees and costs.

## COUNT II

### Breach of Express Warranty
### On Behalf of Plaintiff and the Class

83.     Plaintiff realleges and incorporate by reference the allegations contained in all preceding paragraphs, except for the paragraphs of Count I, which are not incorporated by reference, as if fully set forth herein.

84.     Plaintiff, and each member of the Class, formed a contract with Defendants at the time Plaintiff and the other members of the Class purchased Pompeian Brand, Bertolli Brand, and Filippo Berio Brand. The terms of that contract include the promises and affirmations of fact made by Defendants on their product labels and through its marketing campaign, as

22

described above. This product labeling and advertising constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendants on the other.

85.     All conditions precedent to Defendants' liability under this contract, including notice, have been performed by Plaintiff and the Class.

86.     Defendants breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing the products as advertised and described above.

87.     As a result of Defendants' breach of its contract and warranties, Plaintiff and the Class have been damaged in the amount of the purchase price of the Pompeian Brand, Bertolli Brand, and Filippo Berio Brand they purchased.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment:

A.     Certifying the Class as requested herein, and appointing Plaintiff and Class Representative and Plaintiff's counsel as Class Counsel;

B.     Awarding Plaintiff and the proposed Class members damages;

C.     Awarding restitution and disgorgement of Defendants' revenues to Plaintiff and the proposed Class members;

D.     Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

E.     Ordering Defendants to engage in a corrective advertising campaign;

F.     Awarding attorneys' fees and costs; and

23

G.    Providing such further relief as may be just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED: August **13**, 2010

ROBBINS GELLER RUDMAN & DOWD LLP
STUART A. DAVIDSON
Florida Bar No. 084824
CULLIN A. O'BRIEN
Florida Bar No. 597341
MARK DEARMAN
Florida Bar No. 982407

Stuart A. Davidson

120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
cobrien@rgrdlaw.com
mdearman@rgrdlaw.com

THE GERSON LAW FIRM
STEVEN GERSON
8551 West Sunrise Blvd., Suite 300
Plantation, FL 33322
Telephone: 954/915-8888
954/915-9191 (fax)
sgerson@gersonlawfirm.com

Attorneys for Plaintiff and the Class

24

# EXHIBIT B

```
 1 | CALLAHAN & BLAINE
   | A Professional Law Corporation
 2 | Daniel J. Callahan (Bar No. 91490)
   | Michael J. Sachs (Bar No. 134468)
 3 | John W. Hurney (Bar No. 161617)
   | 3 Hutton Centre Drive, Ninth Floor
 4 | Santa Ana, California 92707
   | (714) 241-4444 / (714) 241-4445 [FAX]
 5 |
   | Attorneys for Plaintiffs
 6 |
 7 |
 8 |                 SUPERIOR COURT OF THE STATE OF CALIFORNIA
 9 |              COUNTY OF ORANGE, CIVIL COMPLEX CENTER
10 |
11 | DAVID W. MARTIN, an individual;          )  CASE NO.  30-2010-00395464-CU-FR-CXC
   | ANTONELLO RISTORANTE, INC. dba           )
12 | ANTONELLO'S RISTORANTE, a California      )  Judge:
   | Corporation; FAYE LEFURGEY, an           )  Dept:   Judge Nancy Wieben Stock
13 | individual, DOLORES OTTING, an individual;)
   | and THOMAS WISH, an individual;          )  CLASS ACTION COMPLAINT FOR:
14 | MICHAEL D. OWINGS, an individual; 3       )  (1)   FRAUD;
   | DINKS, INC., a California Corporation; on )  (2)   NEGLIGENT
15 | their own behalf and on behalf of all others)        MISREPRESENTATION;
   | similarly situated,                      )  (3)   BREACH OF WARRANTY;
16 |                                           )  (4)   FALSE ADVERTISING UNDER
   |                     Plaintiffs,           )        CALIFORNIA BUSINESS &
17 |                                           )        PROFESSIONS CODE SECTION
   |          vs.                              )        17500;
18 |                                           )  (5)   FALSE ADVERTISING UNDER
   | CARAPELLI USA, LLC, a Minnesota           )        CALIFORNIA BUSINESS &
19 | Corporation; ACH FOOD COMPANIES, INC,     )        PROFESSIONS CODE SECTION
   | an Illinois Corporation and an indirect   )        17200; AND
20 | wholly-owned subsidiary of ASSOCIATED     )  (6)   UNJUST ENRICHMENT
   | BRITISH FOODS; BARIANI OLIVE OIL,         )
21 | LLC, a California Corporation; BORGES      )
   | USA, INC., a California Corporation;       )
22 | COLAVITA USA, a New Jersey Corporation;    )  JURY TRIAL DEMANDED
   | GEMSA ENTERPRISES, LLC a California        )
23 | Corporation; G.L. MEZZETTA, INC., a        )
   | California Corporation; POMPEIAN, INC., a  )
24 | Maryland Corporation; RACHAEL RAY          )
   | DIGITAL LLC, a Maryland Corporation;       )
25 | SAFEWAY, INC. dba SAFEWAY SELECT, a        )
   | Delaware Corporation; SALOV NORTH          )
26 | AMERICA CORPORATION, a New Jersey          )
   | Corporation; UNILEVER UNITED STATES,       )
27 | INC.,a Delaware Corporation and a subsidiary)
   | of UNUS HOLDING B.V. which is an           )
28 | indirectly wholly owned subsidiary of      )
```

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

08/02/2010 at 09:24:37 AM

Clerk of the Superior Court
By Maarit H Nordman,Deputy Clerk

1  UNILEVER N.V. and UNILEVER PLC.; )
   ALBERTSON'S, LLC., a California )
2  Corporation; GELSON'S MARKETS a wholly )
   owned subsidiary of ARDEN-MAYFAIR, INC. )
3  a wholly owned subsidiary of ARDEN )
   GROUP, INC., California Corporations; )
4  RALEY'S dba NOB HILL FOODS, a )
   California Corporation; BRISTOL FARMS, a )
5  California Corporation; K MART )
   CORPORATION, a Michigan Corporation; )
6  THE KROGER CO. dba RALPHS, an Ohio )
   Corporation; RESTAURANT DEPOT, LLC, a )
7  Delaware Corporation; SAFEWAY, INC. dba )
   VONS and PAVILIONS, a Delaware )
8  Corporation; STATER BROS. MARKETS, a )
   California Corporation; SYSCO FOODS )
9  SERVICES OF LOS ANGELES, INC. a )
   subsidiary of SYSCO CORPORATION, a )
10 Delaware Corporation; TARGET )
   CORPORATION, a Minnesota Corporation; )
11 WAL-MART STORES, INC., an Arkansas )
   Corporation; and DOES 1 through 1000, )
12 inclusive, )

13                    Defendants.      )
                                       )
   _____ )

14

15        Plaintiffs (collectively "Plaintiffs") on their own behalf and on behalf of all others

16 similarly situated, allege:

17                              I.

18                      **INTRODUCTION**

19        The Defendants, olive oil manufacturers, distributors and retailers who sell their

20 product in the State of California, have been misleading and defrauding California consumers for

21 years.   Defendants have been claiming the olive oil they sell meets the high standard of "extra virgin"

22 classification, thus, entitling Defendants to charge a hefty premium for the product, when in fact the

23 product does not meet that standard and is of inferior quality.  Consumers spend an amazing $700

24 million dollars a year on this product not realizing the products purchased from these Defendants,

25 which represent the vast majority of olive oil manufacturers, distributors and retailers who sell their

26 product in California, are not worthy of their premium prices.

27

28

                                    2

# II.

## FACTUAL ALLEGATIONS

1. For years, chefs and home cooks have shared anecdotal tales of extra virgin olive oil that just did not taste right. It has now become clear that these tales were based in fact. Upon information and belief, Defendants and others have been defrauding consumers by claiming the olive oil they are manufacturing, distributing and/or selling is of sufficient quality to call the product extra-virgin olive oil when in fact it is not. In addition, the Defendants do not insure that the product, whose quality can deteriorate with time and sun exposure and become rancid, is sold to the consumer at a level that still constitutes the product having the quality worthy of the classification of extra virgin.

2. In reality, the Defendants' products do not warrant the high standard of "extra virgin" and, therefore, are not worthy of the premium price charged for extra virgin olive oil by the Defendants. With respect to all of the Defendants, the deceptive statements are printed clearly on the front of every one of their bottles of extra virgin olive oil.

3. A June 2010 study, performed by the prominent University of California at Davis' Olive Oil Center, whose report is entitled *"Tests indicate that imported "extra virgin" olive oil often fails international and USDA standards,"* confirmed to the world the extent of this industry wide deception carried out against California consumers.

4. The UC Davis Report noted that the "UC Davis Olive Oil Chemistry Laboratory collaborated with the Australian Oils Research Laboratory to evaluate the quality of extra virgin olive oils sold on retail shelves in California." The "two laboratories evaluated the oils based on standards and testing methods established by the International Olive Council (IOC) and United States Department of Agriculture (USDA), as well as several newer standards and testing methods adopted in Germany and Australia."

5. The results of the tests were shocking. The tests found that the "samples of imported olive oil labeled as 'extra virgin,' and sold at retail locations in California, often did not meet international and US standards. Sensory tests showed that these failed samples had defective flavors

3

1  such as rancid, fusty, and musty. Negative sensory results were confirmed by chemical data in 86

2  percent of the cases."[1]

3        6.    The UC Davis Report went on to note that the "samples failed extra virgin

4  standards for reasons that include one or more of the following:

5        •    oxidation by exposure to elevated temperatures, light, and/or aging;

6        •    adulteration with cheaper refined olive oil;

7        •    poor quality oil made from damaged and overripe olives, processing

8        flaws, and/or improper oil storage."

9        7.    The report concluded that *"that samples of imported olive oil labeled as 'extra*

10  *virgin' and sold at retail locations in California often did not meet international and US*

11  *standards.*" Thus, California consumers, including the Plaintiffs identified herein, are being sold a

12  low quality product for the price of what one would expect to pay for a much higher quality product,

13  which results in an outrageous unjust enrichment to the benefit of the Defendants.

14        8.    The issues in this action were highlighted in a July 15, 2010 Los Angeles Times

15  article entitled "*UC Davis researchers report that most common brands sold in California are*

16  *mislabeled, which can cost consumers money and worse,*" which noted:

17      Extra-virgin oil is marketed as a premium consumer product. At a
    Pavilions grocery store in Seal Beach, a 750-milliliter bottle of Bertolli's

18      extra-virgin olive oil cost $14.29, while the same-size bottle of Bertolli's
    extra-light olive oil cost $7.99. (The store was not part of the report

19      released Wednesday afternoon.)

20      The report underscores problems in an industry dominated by overseas
    importers and which has consumers slurping up more than $700 million

21      of the stuff a year. The results were a combined effort of research
    conducted by scientists at UC Davis and at the Australian Oils Research

22      Laboratory, a governmental research center accredited by the
    International Olive Council in Madrid, whose product standards the new

23      U.S. Department of Agriculture rules are generally based upon.[2]

24

25

26    [1] Fusty is defined as stale and unclean smelling and musty is defined as smelling damp.

27    [2] Los Angles Times article entitled "*UC Davis researchers report that most common brands sold in*

28  *California are mislabeled, which can cost consumers money and worse,*" by P.J. Huffstutter and
Kristena Hansen dated July 15, 2010.

4

CLASS ACTION COMPLAINT

9.      Though Defendants' olive oil does not meet the standard of extra virgin, the Defendants still manufacture, market and distribute their product with advertising and labeling that represents the product to be of extra virgin quality.

10.     By making these false claims, Defendants have convinced unwary consumers to pay an outrageous price for what is, at best, a product worth much less than that of the value for which it is sold, as evidenced by the cited Los Angeles Times article which shows the so-called "extra virgin" olive oil being sold for almost 80% more than it is worth.

11.     Though the Defendants' olive oils do not meet the standards for being "extra virgin," Defendants nevertheless promote and price their product as such to unwitting customers. This results in an extreme unjust enrichment on the part of this Defendants. Accordingly, Plaintiffs bring this lawsuit – primarily to enjoin this fraud, and secondarily to recover the millions of dollars taken from Californians by the nefarious and deceptive practices of these Defendants.

12.     Each of the Plaintiffs have purchased olive oil products within the State of California from the Defendants, though not all from the same Defendant, based on their belief that the product(s) met the standard of being called "extra virgin" and, therefore, warranting the premium price of the product.  None of the Plaintiffs would have purchased any of these products if they knew the quality level of the product was not that of extra virgin.

## III.

## VENUE

13.     This Court has jurisdiction over all causes of action asserted herein pursuant to the California Constitution.

14.     Venue as to each Defendant is proper in this judicial district, pursuant to California Code of Civil Procedure Section 395.5.  Many of the wrongful and unlawful acts and omissions of Defendants, which are described throughout, were committed by Defendants in the County of Orange, State of California.  In addition, Orange County is the county where the principal place of business of a Defendant, thus, making Orange County the proper venue for this action.

CLASS ACTION COMPLAINT

# IV.

## PARTIES

**A.** **Plaintiffs**

15.     Plaintiff DAVID W. MARTIN, is one of the most recognized chef's from Bravo TV's *"Top Chef"* Season One.  He is a former resident of California and a current resident of New York, New York, and still regularly works as a chef in California, who purchases and used what he had been led to believe was extra virgin olive oil from the Defendants.

16.     Plaintiff ANTONELLO RISTORANTE, INC. dba ANTONELLO'S RISTORANTE, a California corporation, operates one of the finest Italian Restaurants in California, which purchases and used what it had been led to believe was extra virgin olive oil from the Defendants.

17.     Plaintiff FAYE LEFURGEY is a California citizen who purchases and used what it had been led to believe was extra virgin olive oil from the Defendants.

18.     Plaintiff DOLORES OTTING is a California citizen who purchases and used what it had been led to believe was extra virgin olive oil from the Defendants.

19.     Plaintiff THOMAS WISH is a California citizen who purchases and used what it had been led to believe was extra virgin olive oil from the Defendants.

20.     Plaintiff MICHAEL D. OWINGS, a well recognized American chef and well known restaurateur who lives in the Palm Springs area of California and is Culinary Director of Dink's Restaurant and Ultra Lounge, who purchases and uses what he had been led to believe was extra virgin olive oil from the Defendants.

21.     Plaintiff 3 DINKS, INC., a California corporation, which owns Dink's Restaurant and Ultra Lounge, a gourmet restaurant in Palm Springs, California, which purchases and uses what it had been led to believe was extra virgin olive oil from the Defendants.

22.     Plaintiffs, and each of them, will adequately represent the interests of the Class and will vigorously participate in this matter as a class action when certified.  Plaintiffs' class representatives have secured counsel experienced in class action litigation who will likewise adequately represent the class.

CLASS ACTION COMPLAINT

60

**B.**     <u>Defendants</u>.

23.     Defendant CARAPELLI USA, LLC, an olive oil manufacturer, who, upon information and belief, is a corporation incorporated in the State of Minnesota and doing business throughout the United States and specifically the State of California which owns, advertises, and distributes olive oil under the brand name CARAPELLI.

24.     Defendant ACH FOOD COMPANIES, INC, is an olive oil manufacturer, who is an indirect wholly-owned subsidiary of ASSOCIATED BRITISH FOODS, which upon information and belief, is a corporation incorporated in the State of Illinois and doing business throughout the United States and specifically the State of California which owns, advertises, and distributes olive oil under the brand name MAZOLLA.

25.     Defendant BARIANI OLIVE OIL, LLC, is an olive oil manufacturer, who, upon information and belief, is a corporation incorporated in the State of California and doing business throughout the United States and specifically the State of California which owns, advertises, and distributes olive oil under the brand name BARIANI.

26.     Defendant BORGES USA, INC., is an olive oil manufacturer, who, upon information and belief, is a corporation incorporated in the State of California and doing business throughout the United States and specifically the State of California which owns, advertises, and distributes olive oil under the brand name STAR.

27.     Defendant COLAVITA USA, is an olive oil manufacturer, who, upon information and belief, is a corporation incorporated in the State of New Jersey and doing business throughout the United States and specifically the State of California which owns, advertises, and distributes olive oil under the brand name COLAVITA.

28.     Defendant GEMSA ENTERPRISES, LLC is an olive oil manufacturer, who, upon information and belief, is a corporation incorporated in the State of California with its principal place of business in the City of Orange, Orange County, California, and doing business throughout the United States and specifically the State of California which owns, advertises, and distributes olive oil, and, upon information and belief, it manufactures olive oil for many other entities, whose identities will be determined during discovery.

7

29.     Defendant G.L. MEZZETTA, INC., is an olive oil manufacturer, who, upon information and belief, is a corporation incorporated in the State of California and doing business throughout the United States and specifically the State of California which owns, advertises, and distributes olive oil under the brand name MEZZETTA.

30.     Defendant POMPEIAN, INC., is an olive oil manufacturer, who, upon information and belief, is a corporation incorporated in the State of Maryland and doing business throughout the United States and specifically the State of California which owns, advertises, and distributes olive oil under the brand name POMPEIAN.

31.     Defendant RACHAEL RAY DIGITAL LLC, is an olive oil manufacturer, who, upon information and belief, is a corporation incorporated in the State of Maryland and doing business throughout the United States and specifically the State of California which owns, advertises, and distributes olive oil under the brand name RACHAEL RAY.

32.     Defendant SAFEWAY, INC., is an olive oil manufacturer, who, upon information and belief, is a corporation incorporated in the State of Delaware and doing business throughout the United States and specifically the State of California which owns, advertises, and distributes olive oil under the brand name SAFEWAY SELECT.

33.     Defendant SALOV NORTH AMERICA CORPORATION, is an olive oil manufacturer, who, upon information and belief, is a corporation incorporated in the State of New Jersey and doing business throughout the United States and specifically the State of California which owns, advertises, and distributes olive oil under the brand name FILIPPO BERIO.

34.     Defendant UNILEVER UNITED STATES, INC., is an olive oil manufacturer, who, upon information and belief, is a corporation that is a wholly owned subsidiary of UNUS HOLDING B.V. which is an indirectly wholly owned subsidiary of UNILEVER N.V. and UNILEVER PLC., and is, upon information and belief, incorporated in the State of Delaware and doing business throughout the United States and specifically the State of California which owns, advertises, and distributes the olive oil under the brand name BERTOLLI.

35.     Defendant ALBERTSON'S, LLC., is an olive oil retailer, who, upon information and belief, is a Delaware corporation and doing business throughout the United States

8

1  and specifically the State of California, who upon information and belief, advertises, markets, sells and

2  distributes olive oil to individual consumers and institutional consumers such as restaurants.

3         36.    Defendant GELSON'S MARKETS a wholly owned subsidiary of

4  ARDEN-MAYFAIR, INC., a wholly owned subsidiary of ARDEN GROUP, INC., an olive oil retailer,

5  who, upon information and belief, is a California corporation, who upon information and belief,

6  advertises, markets, sells and distributes olive oil to individual consumers and institutional consumers

7  such as restaurants.

8         37.    Defendant RALEY'S dba NOB HILL FOODS, is an olive oil retailer, who,

9  upon information and belief, is a California corporation, who upon information and belief, advertises,

10  markets, sells and distributes olive oil to individual consumers and institutional consumers such as

11  restaurants.

12         38.    Defendant BRISTOL FARMS, is an olive oil retailer, who, upon information

13  and belief, is a California corporation, who upon information and belief, advertises, markets, sells and

14  distributes olive oil to individual consumers and institutional consumers such as restaurants.

15         39.    Defendant K MART CORPORATION, is an olive oil retailer, who, upon

16  information and belief, is a Michigan corporation and doing business throughout the United States and

17  specifically the State of California, who upon information and belief, advertises, markets, sells and

18  distributes olive oil to individual consumers and institutional consumers such as restaurants.

19         40.    Defendant THE KROGER CO. dba RALPHS, is an olive oil retailer, who, upon

20  information and belief, is an Ohio corporation and doing business throughout the United States and

21  specifically the State of California, who upon information and belief, advertises, markets, sells and

22  distributes olive oil to individual consumers and institutional consumers such as restaurants.

23         41.    Defendant RESTAURANT DEPOT, LLC, is an olive oil retailer, who, upon

24  information and belief, is a Delaware corporation doing business throughout the United States and

25  specifically the State of California, who upon information and belief, advertises, markets, sells and

26  distributes olive oil to institutional consumers such as restaurants.

27         42.    Defendant SAFEWAY, INC. dba VONS and PAVILIONS, is an olive oil

28  retailer, who, upon information and belief, is a Delaware corporation and doing business throughout

CLASS ACTION COMPLAINT

63

1  the United States and specifically the State of California, who upon information and belief, advertises,

2  markets, sells and distributes olive oil to individual consumers and institutional consumers such as

3  restaurants.

4          43.     Defendant STATER BROS. MARKETS, is an olive oil retailer, who, upon

5  information and belief, is a California corporation, who upon information and belief, advertises,

6  markets, sells and distributes olive oil to individual consumers and institutional consumers such as

7  restaurants.

8          44.     Defendant SYSCO FOODS SERVICES OF LOS ANGELES, INC., is an olive

9  oil retailer, who, upon information and belief, is a Delaware corporation, which is, upon in formation

10  and belief, a subsidiary of SYSCO CORPORATION a Delaware Corporation and doing business

11  throughout the United States and specifically the State of California, who upon information and belief,

12  advertises, markets, sells and distributes olive oil to individual consumers and institutional consumers

13  such as restaurants.

14          45.     Defendant TARGET CORPORATION, is an olive oil retailer, who, upon

15  information and belief, is a Minnesota corporation and doing business throughout the United States

16  and specifically the State of California, who upon information and belief, advertises, markets, sells and

17  distributes olive oil to individual consumers and institutional consumers such as restaurants.

18          46.     Defendant WAL-MART STORES, INC., is an olive oil retailer, who, upon

19  information and belief, is an Arkansas corporation and doing business throughout the United States

20  and specifically the State of California, who upon information and belief, advertises, markets, sells and

21  distributes olive oil to individual consumers and institutional consumers such as restaurants.

22          47.     The true names and capacities, whether individual, corporate, associate, or

23  otherwise, of Defendants sued herein as Does 1 through 1,000, inclusive, are currently unknown to

24  Plaintiffs who therefore sue said Defendants by such fictitious names under Code of Civil Procedure

25  §474.  Plaintiffs are informed and believe, and based thereon allege, that each of the Defendants

26  designated herein as a Doe is legally responsible in some manner for the unlawful acts referred to

27  herein.  Plaintiffs will seek leave of Court to amend this Complaint to reflect the true names and

28  capacities of the Defendants designated as Does when such entities become known.

CLASS ACTION COMPLAINT

48.     Plaintiffs are informed and believe and upon such information and belief allege that at all times herein mentioned, that each named Defendant, and Defendant DOES 1 through 1,000, inclusive, and each of them, were the agents, servants, employees and assistants of each remaining Defendants, and in doing the things alleged in this Complaint, were acting within the course, scope, purpose and authority of said agency and employment and that each Defendant ratified the conduct of every other Defendant.

## V.

## CLASS ACTION ALLEGATIONS

49.     Plaintiffs bring this action on behalf of themselves and all others similarly situated as a class action pursuant to Section 382 of the Code of Civil Procedure.

50.     Plaintiffs bring this class action for damages and other monetary relief on behalf of the following class:

> All persons and entities located within California who purchased extra virgin olive oil from Defendants at any time during the four years preceding the filing of this Complaint (the "Class").

51.     Excluded from the Class are governmental entities, Defendants, any entity in which defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer, presiding over this matter and the members of their immediate families and judicial staff.

52.     NUMEROSITY:  The proposed Class is so numerous that individual joinder of all its members is impracticable. Due to the nature of the trade and commerce involved, however, Plaintiffs believe that the total number of Class members is at least in the hundreds of thousands and members of the Class are numerous and geographically dispersed across California.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.

11

CLASS ACTION COMPLAINT

65

53.   <u>COMMONALITY</u>:  There is a well-defined community of interest in the questions of law and fact involved affecting the class and these common questions predominate over any questions that may affect individual Class members.  Common questions of fact and law include, but are not limited to, the following:

a.   Are Defendants' claims as to the quality of the olive oil they are selling, specifically that it meets the standard of being extra virgin false?

b.   Are Defendants' claims as to the quality of the olive oil they are selling, specifically that it meets the standard of being extra virgin misleading?

c.   Do Defendants have adequate substantiation to support their claims that quality of the olive oil they are selling-- specifically that their oils meets the standard of being extra virgin?

d.   When and to what extent did Defendants know that the claims they were making about the quality of their olive oil were false and/or misleading?

54.   <u>TYPICALITY</u>:  Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiffs and all members of the Class have been similarly affected by Defendants' common course of conduct since they all purchased olive oil for use in cooking after Defendants made the quality claims regarding their olive oils.

55.   <u>ADEQUACY</u>:  Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiffs have no interests adverse to the interests of the other Class Members.  Plaintiffs have retained counsel with substantial experience in handling complex class action litigation.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class.  Plaintiffs have retained an attorney that is widely recognized as one of the most successful and effective class action litigators in California.  Proposed class counsel, Callahan & Blaine, is competent and experienced in litigation including consumer claims.

56.   <u>SUPERIORITY</u>:  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.  Individual joinder of all members of the class is impracticable.  Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would

12

CLASS ACTION COMPLAINT

1  proceed.  Individual litigation magnifies the delay and expense to all parties in the court system of

2  resolving the controversies engendered by Defendants' common course of conduct.  The class action

3  device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the

4  fair and efficient handling of all class members' claims in a single forum.  The conduct of this action

5  as a class action conserves the resources of the parties and of the judicial system and protects the rights

6  of the class members.  Furthermore, for many, if not most, a class action is the only feasible

7  mechanism that allows an opportunity for legal redress and justice.  Adjudication of individual class

8  members' claims with respect to the Defendants would, as a practical matter, be dispositive of the

9  interests of other members not parties to the adjudication, and could substantially impair or impede the

10  ability of other class members to protect their interests.

11          57.    Plaintiffs reserve the right under 3.760 et seq. of the <u>California Rules of Court</u>,

12  to amend or modify the class description by making it more specific or dividing the class members

13  into subclasses or limiting the issues.

14          58.    This action has been brought and may properly be maintained as a class action

15  under the provisions of Section 382 of the California <u>Code of Civil Procedure</u> because there is a well-

16  defined community of interest in the litigation and the proposed class is easily ascertainable.

17

18                                    **VI.**

19                          <u>**CAUSES OF ACTION**</u>

20                         <u>**FIRST CAUSE OF ACTION**</u>

21                               (Fraud)

22                          (Against All Defendants)

23          59.    Plaintiffs incorporate by reference Paragraphs 1 through 59 above as though

24  fully set forth herein.

25          60.    Defendants have affirmed as a fact, promised, and described their product as

26  being of the quality of "extra virgin" olive oil.  These descriptions, affirmations of fact, quality and/or

27  promises are false and were known false when made, and constitute fraud.

28

                                      13

1       61.    The elements of common law fraud are a misrepresentation, knowledge of its

2  falsity, intent to defraud, justifiable reliance, and resulting damage. <u>Gil v. Bank of America, NA</u>

3  (2006) 138 Cal. App.4th 1371, 1381. Section 1572 of the California <u>Civil Code</u> further defines fraud

4  to include (1) the suggestion, as a fact, of that which is not true, by one who does not believe it to be

5  true; (2) the positive assertion, in a manner not warranted by the information of the person making it,

6  of that which is not true, though he believes it to be true; (3) the suppression of that which is true, by

7  one having knowledge or belief of the fact; (4) a promise made without any intention of performing it;

8  or (5) any other act fitted to deceive.

9       62.    Plaintiffs suffered damages due to Defendants' material, false, and fraudulent

10  misrepresentations that their products meet the high standard of "extra virgin" classification, which

11  were intended to deceive consumers into buying their product.  Plaintiffs intended to pay a premium

12  for "extra virgin" olive oil and were deliberately led to believe that the products they were purchasing

13  meet the high standard of "extra virgin" classification.

14       63.    Defendants were fully aware that their product did not meet the high standard of

15  "extra virgin" classification when they fraudulently named and marketed their product and misled the

16  public, including the Plaintiffs.

17       64.    Defendants know and have known for some time that their product did not meet

18  the high standard of "extra virgin" classification, yet they willfully have continued to sell, market and

19  advertise it as such.  Defendants boldly place labels on their products indicating the contents contain

20  "Extra Virgin Olive Oil" when they know that claim to be false.

21       65.    Plaintiffs justifiably relied on Defendants' fraudulent description of their

22  product when they purchased the products.  All consumers naturally rely on the name and label of a

23  product to determine what they are buying.  If an olive oil product is held to meet the high standard of

24  "extra virgin," consumers reasonably believe that is what they are buying and that it is a product that

25  comes with a premium price.  Plaintiffs did rely on these statements.  Plaintiffs reliance was

26  reasonable on its face, particularly given the appearance and labeling of the product, as well as

27  Defendants' prominent marketing of the product.

28

66.    Defendants' fraudulent conduct damaged Plaintiffs.  Plaintiffs were deceived into buying and paying for a product that they believed to be of a premium quality when, in fact the product was actually an inferior product.  Plaintiffs would not have purchased Defendants' products had they known the truth. Plaintiffs have suffered monetary and such other and further damages as may be proven at trial.

67.    Plaintiffs further seek an award of punitive damages appropriate to deter, punish, and make an example of Defendants.  Defendants intentionally pursued and continue to pursue the herein-alleged fraudulent course of action designed to make money at the expense of consumers. They did so knowing it was misleading.  Such conduct is reprehensible, and is malicious, oppressive, and fraudulent within the meaning of California <u>Civil Code</u> Section 3294.

## SECOND CAUSE OF ACTION

(Negligent Misrepresentation)

(Against All Defendants)

68.    Plaintiffs incorporate by reference Paragraphs 1 through 67 above as though fully set forth herein.

69.    Defendants have affirmed as a fact promised, described, marketed, and sold their product as meeting the high standard of "extra virgin" classification.  If not deliberately fraudulent, and in the alternative to that theory, these descriptions, affirmations of fact, and/or promises, if not intentional and fraudulent constitute negligent misrepresentations.

70.    Defendants made these false statements without reasonable grounds for believing them to be true.

71.    Plaintiffs relied on Defendants' misstatements of fact when they purchased Defendants' inferior product.

72.    Plaintiffs were damaged in that they was deceived into buying a product that they believed was something that it was not and a product that was worth less and was inferior in its quality to the product promised by the Defendants.

15

73.     Plaintiffs are entitled to restitution and disgorgement of the monies received by Defendants from the sale of the improperly classified olive oil.

### THIRD CAUSE OF ACTION

(Breach of Warranty)

(Against All Defendants)

74.     Plaintiffs incorporate by reference Paragraphs 1 through 73 above as though fully set forth herein.

75.     Defendants have affirmed as a fact, promised, and described their product as "extra virgin" olive oil.  These descriptions, affirmations of fact, and/or promises constitute express warranties.

76.     Within the applicable limitations period, Defendants have warranted to consumers in California that their products meet the high standard of "extra virgin" classification when it does not.  For instance, and without limitation, Defendants have sold their product in containers labeled "extra virgin olive oil" and have identified their product as "extra virgin olive oil" in print advertisements and news articles.

77.     Within the applicable limitations period, Defendants also have warranted to consumers in California that their products meet the high standard of "extra virgin" classification .

78.     California Commercial Code Section 2313 provides that:

(1)     Express warranties by the seller are created as follows:

(a)     Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b)     Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c)     Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2)     It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a

16

specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

79.     Defendants breached their warranties with respect to their product because, as alleged above, their products do not meet the high standard of "extra virgin" classification

80.     Plaintiffs have been damaged as a result of Defendants' breaches of their express warranty obligations in an amount to be determined at trial in that.

## FOURTH CAUSE OF ACTION

(False Advertising Under California Business & Professions Code Section 17500)

(Against All Defendants)

81.     Plaintiffs incorporate by reference Paragraphs 1 through 80 above as though fully set forth herein.

82.     Defendants knew or in the exercise of reasonable care should have known that their publicly disseminated statements and omissions relating to the quality of the olive oil they were selling was false and/or misleading.  Defendants' false advertising packaging, advertising, statements and omissions injure and injured Plaintiffs.  Defendants' false and misleading packaging, advertising, and statements include, among others, that Defendants' product is classified as extra virgin when it does not qualify as extra virgin olive oil.

83.     By making such untrue or misleading statements, Defendants have engaged in false advertising in violation of the statutory law of the state of California, California Business & Professions Code Section 17500, et seq.

84.     By reason of Defendants' conduct, Plaintiffs have suffered injury in fact and have lost money or property.

85.     Defendants have caused, and will continue to cause, immediate and irreparable injury to Plaintiffs, for which there is no adequate remedy at law.  Plaintiffs are entitled to an injunction restraining Defendants, their agents, employees, representatives and all persons acting in concert with them from engaging in further such acts, and forbidding Defendants from advertising and

17

1  marketing their products as being of extra virgin quality and from making other false and/or

2  misleading statements in connection with their products.

3           86.     Plaintiffs are further entitled to a restitutionary recovery from Defendants.

4

5  **FIFTH CAUSE OF ACTION**

6  (False Advertising Under California Business & Professions Code Section 17200)

7  (Against All Defendants)

8           87.     Plaintiffs incorporate by reference Paragraphs 1 through 86 above as though

9  fully set forth herein.

10           88.     Defendants have made, published, disseminated, and circulated false, deceptive,

11  and misleading statements, representations, and advertisements in California misrepresenting the

12  nature, quality, and characteristics of their olive oil with the intent of selling, distributing, and

13  increasing the consumption of, and interest in, their product rather than in the products that actually

14  qualify to be called extra virgin olive oil.

15           89.     Plaintiffs have standing to pursue their claims as they have suffered injury in

16  fact and have lost money as a result of Defendants' false advertising and unfair business

17  practices.  Specifically, prior to the filing of this action, Plaintiffs purchased olive oil from these

18  manufacturers, distributors and retailers for their use in cooking.  In so doing, they relied upon the

19  false representations referenced above.

20           90.     Defendants' actions as alleged in this complaint constitute an unfair or

21  deceptive business practice within the meaning of California Business and Professions Code Section

22  17200 in that Defendants' actions are unfair, unlawful, and misleading, and because the advertising

23  statements are false and misleading within the meaning of California Business and Professions Code

24  Sections 17500, et seq.

25           91.     Plaintiffs seek all remedies available under Section 17200 of the California

26  Business and Professions Code, including restitutionary and injunctive relief, as well as

27  attorneys' fees and costs.

28

18

92.   Defendants' conduct as alleged herein constitutes unfair competition in that such acts were and are unlawful, unfair, deceptive and/or fraudulent business acts or practices in violation of California Business & Professions Code Section 17200, et seq.

93.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered injury in fact, which losses include monetary damages for buying a product of inferior quality for the price of extra virgin olive oil.

94.   These wrongful acts have proximately caused and will continue to cause Plaintiffs and all olive oil purchasers substantial injury. The harm these wrongful acts will cause to Plaintiffs is both imminent and irreparable, and the amount of damage sustained by Plaintiffs will be difficult to ascertain if these acts continue. Plaintiffs have no adequate remedy at law.

95.   Plaintiffs are entitled to an injunction restraining Defendants, their officers, agents, employees, and all persons acting in concert with them from engaging in further such unlawful conduct.

96.   Plaintiffs are further entitled to a restitutionary recovery from Defendants.

## SIXTH CAUSE OF ACTION

(Unjust Enrichment)

(Against All Defendants)

97.   Plaintiffs incorporate by reference Paragraphs 1 through 96 above as though fully set forth herein.

98.   Defendants have retained and benefitted from revenues and profits they received from the sale of their improperly classified olive oil.

99.   Defendants' retention of revenues and profits from the sale of their improperly classified olive oil is unjust.

100.   Defendants' retention of revenues and profits from the sale of their improperly classified olive oil has unjustly enriched each of them at the expense of Plaintiffs.

101.   Plaintiffs are entitled to restitution and disgorgement of the monies received by Defendants from the sale of the improperly classified olive oil.

19

1         102.    Retention by Defendants of monies received by virtue of their causing their

2 improperly classified olive oil to be sold at a higher value than it deserved violates the principles of

3 equity and good conscience.

4                             **VII.**

5                      **PRAYER FOR DAMAGES**

6         WHEREFORE, Plaintiffs pray for judgment against the Defendants, and each of them,

7 as follows:

8         1.    Certification of the proposed classes and notice thereto to be paid by

9 Defendants;

10         2.    Adjudge and decree that Defendants have engaged in the conduct alleged

11 herein;

12         3.    For all legal and equitable remedies available under the Unfair Business

13 Practices Act;

14         4.    For punitive damages against Defendants in an amount sufficient to punish and

15 set an example of Defendants;

16         5.    For an accounting by Defendants for any and all profits derived by Defendants

17 from the sale of their product;

18         6.    That Plaintiffs be awarded Defendants' profits obtained by Defendants as a

19 consequence of Defendants' conduct;

20         7.    For any and all other legal and equitable remedies that may be available,

21 including damages, disgorgement of profits, statutory penalties, attorneys' fees, costs, and

22 pre-judgment and post-judgment interest; and

23         8.    For such other relief as the Court deems just and proper.

24 Dated: August 2, 2010                CALLAHAN & BLAINE, APLC

25

26                      By:

27                         Daniel J. Callahan

                            Michael J. Sachs

28                         John W. Hurney

                            Attorneys for Plaintiffs

CLASS ACTION COMPLAINT

74

1                             **DEMAND FOR JURY TRIAL**

2        Plaintiffs hereby demand trial by jury of all factual issues arising hereunder.

3

4 Dated:  August 2, 2010                      CALLAHAN & BLAINE, APLC

5

6                              By:
                                        Daniel J. Callahan

7                                         Michael J. Sachs
                                        John W. Hurney

8                                         Attorneys for Plaintiffs

9

10

11 G:\3096\3096-02\PLD\Complaint.wpd

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                      CLASS ACTION COMPLAINT

EXHIBIT C

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Michael J. Sachs (SBN 134468)
CALLAHAN & BLAINE, APLC
3 Hutton Centre Drive, Ninth Floor
Santa Ana, CA 92707

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

TELEPHONE NO: (714) 241-4444   FAX NO. *(Optional)*: (714) 241-4445
E-MAIL ADDRESS *(Optional)*: michael@callahan-law.com
ATTORNEY FOR *(Name)*: Plaintiffs

DEC - 9 2010 cme

ALAN CARLSON, Clerk of the Court

m. correa

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS: 751 West Santa Ana Boulevard
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Civil Complex Center

**ELECTRONICALLY RECEIVED**   BY M. CORREA
Superior Court of California,
County of Orange
12/08/2010 at 10:25:23 AM
Clerk of the Superior Court
By Margaret M Demaria, Deputy Clerk

PLAINTIFF/PETITIONER: DAVID W. MARTIN, et al.

DEFENDANT/RESPONDENT: CARAPELLI USA, LLC, et al.

| REQUEST FOR DISMISSAL | CASE NUMBER: |
|---|---|
| ☐ Personal Injury, Property Damage, or Wrongful Death<br>    ☐ Motor Vehicle  ☐ Other<br>☐ Family Law    ☐ Eminent Domain<br>☒ Other *(specify)*: Fraud, Negligent Misrepresntation | 30-2010-00395464-CU-FR-CXC |

- A conformed copy will not be returned by the clerk unless a method of return is provided with the document. -

1. TO THE CLERK: Please **dismiss** this action as follows:
  a. (1) ☐ With prejudice   (2) ☒ Without prejudice
  b. (1) ☒ Complaint   (2) ☐ Petition
    (3) ☐ Cross-complaint filed by *(name):*
    (4) ☐ Cross-complaint filed by *(name):*
    (5) ☐ Entire action of all parties and all causes of action
    (6) ☐ Other *(specify):*\*

*Approved per. 3.770.*

on *(date):*
on *(date):*
12/9/10

2. *(Complete in all cases except family law cases.)*
  ☐ Court fees and costs were waived for a party in this case. *(This information may be obtained from the clerk. If this box is checked, the declaration on the back of this form must be completed).*

Date: December 7, 2010

Michael J. Sachs
(TYPE OR PRINT NAME OF  ☒ ATTORNEY  ☐ PARTY WITHOUT ATTORNEY)

\*If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

(SIGNATURE)
Attorney or party without attorney for: David W. Martin, et al.
☒ Plaintiff/Petitioner   ☐ Defendant/Respondent
  ☐ Cross - complainant

3. TO THE CLERK: Consent to the above dismissal is hereby given.\*\*
  Date:

(TYPE OR PRINT NAME OF  ☐ ATTORNEY  ☐ PARTY WITHOUT ATTORNEY)

\*\* If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

(SIGNATURE)
Attorney or party without attorney for:
☐ Plaintiff/Petitioner   ☐ Defendant/Respondent
  ☐ Cross - Complainant

*(To be completed by clerk)*
4. ☒ Dismissal entered as requested on *(date):* DEC 0 9 2010
5. ☐ Dismissal entered on *(date):*  as to only *(name):*
6. ☐ Dismissal **not** entered as requested for the following reasons *(specify):*

7. a. ☐ Attorney or party without attorney notified on *(date):*
  b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
    ☐ a copy to be conformed ☐ means to return conformed copy

Date: DEC 0 9 2010  ALAN CARLSON Clerk, by *Mauralou Correa*, Deputy
                          MARYLOU CORREA

| Form Adopted for Mandatory use<br>Judicial Council of California<br>CIV-110 [Rev. July 1, 2009] | **REQUEST FOR DISMISSAL** | Page 1 of 2<br>Code of Civil Procedure, § 581 et seq.;<br>Gov. Code, § 68637(c); Cal. Rules of Court, rule 3.1390 |
|---|---|---|

Legal Solutions Plus

76

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Michael J. Sachs (SBN 134468)<br>CALLAHAN & BLAINE, APLC<br>3 Hutton Centre Drive, Ninth Floor<br>Santa Ana, CA 92707 | |

TELEPHONE NO.: (714) 241-4444   FAX NO. *(Optional)*: (714) 241-4445
E-MAIL ADDRESS *(Optional)*: michael@callahan-law.com
ATTORNEY FOR *(Name)*: Plaintiffs

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**
STREET ADDRESS: 751 West Santa Ana Boulevard
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Civil Complex Center

**ELECTRONICALLY RECEIVED**
Superior Court of California,
County of Orange
**12/08/2010** at 10:25:23 AM
Clerk of the Superior Court
By Margaret M Demaria, Deputy Clerk

PLAINTIFF/PETITIONER: DAVID W. MARTIN, et al.

DEFENDANT/RESPONDENT: CARAPELLI USA, LLC, et al.

| **REQUEST FOR DISMISSAL** | CASE NUMBER: |
|---|---|
| [ ] Personal Injury, Property Damage, or Wrongful Death<br>  [ ] Motor Vehicle  [ ] Other<br>[ ] Family Law   [ ] Eminent Domain<br>[X] Other *(specify):* Fraud, Negligent Misrepresntation | 30-2010-00395464-CU-FR-CXC |

- A conformed copy will not be returned by the clerk unless a method of return is provided with the document. -

1. TO THE CLERK: Please **dismiss this** action as follows:
   a. (1) [ ] With prejudice  (2) [X] Without prejudice
   b. (1) [X] Complaint  (2) [ ] Petition
      (3) [ ] Cross-complaint filed by *(name):*                        on *(date):*
      (4) [ ] Cross-complaint filed by *(name):*                        on *(date):*
      (5) [ ] Entire action of all parties and all causes of action
      (6) [ ] Other *(specify):**

2. *(Complete in all cases except family law cases.)*
   [ ] Court fees and costs were waived for a party in this case. *(This information may be obtained from the clerk. If this box is checked, the declaration on the back of this form must be completed).*

Date: December 7, 2010

Michael J. Sachs
(TYPE OR PRINT NAME OF  [X] ATTORNEY  [ ] PARTY WITHOUT ATTORNEY)

*If dismissal requested is of specified parties only or of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

▶ _(signature)_
(SIGNATURE)
Attorney or party without attorney for: David W. Martin, et al.
[X] Plaintiff/Petitioner  [ ] Defendant/Respondent
[ ] Cross - complainant

3. TO THE CLERK: Consent to the above dismissal is hereby given.**
   Date:

(TYPE OR PRINT NAME OF  [ ] ATTORNEY  [ ] PARTY WITHOUT ATTORNEY)

** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

▶
(SIGNATURE)
Attorney or party without attorney for:

[ ] Plaintiff/Petitioner  [ ] Defendant/Respondent
[ ] Cross - Complainant

*(To be completed by clerk)*
4. [ ] Dismissal entered as requested on *(date):*
5. [ ] Dismissal entered on *(date):*                    as to only *(name):*
6. [ ] Dismissal **not entered** as requested for the following reasons *(specify):*

7. a. [ ] Attorney or party without attorney notified on *(date):*
   b. [ ] Attorney or party without attorney not notified.  Filing party failed to provide
        [ ] a copy to be conformed  [ ] means to return conformed copy
   Date:                              Clerk, by                                    , Deputy

Page 1 of 2

Form Adopted for Mandatory use
Judicial Council of California
CIV-110 [Rev. July 1, 2009]

**REQUEST FOR DISMISSAL**   Legal Solutions Plus

Code of Civil Procedure, § 581 et seq.;
Gov. Code, § 68637(c); Cal. Rules of Court, rule 3.1390

77

EXHIBIT D

1  CALLAHAN & BLAINE
   A Professional Law Corporation
2  Daniel J. Callahan (Bar No. 91490)
   Michael J. Sachs (Bar No. 134468)
3  3 Hutton Centre Drive, Ninth Floor
   Santa Ana, California 92707
4  (714) 241-4444 / (714) 241-4445 [FAX]

5  Attorneys for Plaintiffs

6

7

8                  SUPERIOR COURT OF CALIFORNIA

9            COUNTY OF ORANGE, CIVIL COMPLEX CENTER

10

11 DAVID W. MARTIN, an individual;          )   Case No. 30-2010-00395464-CU-FR-CXC
   ANTONELLO RISTORANTE, INC. dba           )
12 ANTONELLO'S RISTORANTE, a California     )   Judge Nancy Wieben Stock
   Corporation; FAYE LEFURGEY, an           )   Department CX105
13 individual, DOLORES OTTING, an individual;)
   and  THOMAS WISH, an individual;         )
14 MICHAEL D. OWINGS, an individual; 3      )
   DINKS, INC., a California Corporation; on )   DECLARATION OF MICHAEL J. SACHS
15 their own behalf and on behalf of all others)  REQUESTING DISMISSAL OF CLASS
   similarly situated,                      )   ACTION
16                                          )
                   Plaintiffs,              )
17                                          )   [Filed Concurrently with Request for Dismissal
          vs.                               )   without Prejudice]
18                                          )
   CARAPELLI USA, LLC, a Minnesota          )
19 Corporation; ACH FOOD COMPANIES, INC, )
   an Illinois Corporation and an indirect  )
20 wholly-owned subsidiary of ASSOCIATED    )
   BRITISH FOODS; BARIANI OLIVE OIL,        )
21 LLC, a California Corporation; BORGES     )
   USA, INC., a California Corporation;      )
22 COLAVITA USA, a New Jersey Corporation;  )
   GEMSA ENTERPRISES, LLC a California      )
23 Corporation; G.L. MEZZETTA, INC., a      )
   California Corporation; POMPEIAN, INC., a )
24 Maryland Corporation; RACHAEL RAY        )
   DIGITAL LLC, a Maryland Corporation;     )
25 SAFEWAY, INC. dba SAFEWAY SELECT, a )       Action Commenced on: August 2, 2010
   Delaware Corporation; SALOV NORTH        )
26 AMERICA CORPORATION, a New Jersey        )
   Corporation; UNILEVER UNITED STATES,     )
27 INC.,a Delaware Corporation and a subsidiary )
   of UNUS HOLDING B.V. which is an         )
28 indirectly wholly owned subsidiary of    )

                                                        DECLARATION OF MICHAEL J. SACHS

| | |
|---|---|
| 1 | UNILEVER N.V. and UNILEVER PLC.; ) |
| | ALBERTSON'S, LLC., a California ) |
| 2 | Corporation; GELSON'S MARKETS a wholly ) |
| | owned subsidiary of ARDEN-MAYFAIR, INC.) |
| 3 | a wholly owned subsidiary of ARDEN ) |
| | GROUP, INC., California Corporations; ) |
| 4 | RALEY'S dba NOB HILL FOODS, a ) |
| | California Corporation; BRISTOL FARMS, a ) |
| 5 | California Corporation; K MART ) |
| | CORPORATION, a Michigan Corporation; ) |
| 6 | THE KROGER CO. dba RALPHS, an Ohio ) |
| | Corporation; RESTAURANT DEPOT, LLC, a ) |
| 7 | Delaware Corporation; SAFEWAY, INC. dba ) |
| | VONS and PAVILIONS, a Delaware ) |
| 8 | Corporation; STATER BROS. MARKETS, a ) |
| | California Corporation; SYSCO FOODS ) |
| 9 | SERVICES OF LOS ANGELES, INC. a ) |
| | subsidiary of SYSCO CORPORATION, a ) |
| 10 | Delaware Corporation; TARGET ) |
| | CORPORATION, a Minnesota Corporation; ) |
| 11 | WAL-MART STORES, INC., an Arkansas ) |
| | Corporation; and DOES 1 through 1000, ) |
| 12 | inclusive, ) |
| | ) |
| 13 | Defendants. ) |
| | ) |

14

15

16    I, Michael J. Sachs, declare and state as follows:

17        1.    I am an attorney duly admitted to practice law before all the courts in the State of

18  California.  I am a partner with the law firm of Callahan & Blaine, attorneys of record for Plaintiffs in

19  this matter.

20        2.    Callahan & Blaine has had conducted exhaustive testing and analysis of the olive oil

21  products of the Defendants in the instant action to confirm that they support the allegations made in

22  the Complaint.  Unfortunately, the results of the testing have been inconclusive and additional testing

23  and analysis is necessary in order to determine whether this action should be maintained against the

24  currently named Defendants.

25        3.    At the last Status Conference in this matter, the Court ordered that the Complaint be

26  served by December 31, 2010.  Because Plaintiffs will not have sufficient time within which to

27  conduct the necessary secondary testing, Plaintiffs respectfully request that the Court dismiss, without

28

2

DECLARATION OF MICHAEL J. SACHS

1 | prejudice, the current action so that it can be re-filed in the future, should the evidence support same.

2 |      I declare under penalty of perjury under the laws of the State of California that the foregoing is

3 | true and correct.  Executed this 7th day of December 2010, at Santa Ana, California.

 

                             Michael J. Sachs

G:\3096\3096-02\PLD\Dec MJS re dismissal.wpd

DECLARATION OF MICHAEL J. SACHS

EXHIBIT E

# Doubts over olive oil are raised anew

By P.J. Huffstutter • Los Angeles Times

**Published:** Thursday, April 14, 2011
**Updated:** Thursday, April 14, 2011 12:04

LOS ANGELES — Nearly three-quarters of popular brands of extra-virgin olive oil found in California grocery stores don't qualify as extra-virgin under international quality standards, according to a new study.

The report, released Wednesday by the University of California-Davis Olive Center and the Australian Oils Research Laboratory, is a follow-up to a similar study the two research centers conducted last summer. That earlier report said that two-thirds of common brands of extra-virgin olive oil found in California grocery stores aren't what they claim to be. Many of those problematic oils, labeled "extra-virgin," were imports that commanded premium prices, according to the researchers.

Wednesday's report, entitled "Evaluation of Extra-Virgin Olive Oil Sold in California," drew a larger group of samples from fewer brands. That was done in part to address some of the criticisms from foreign producers about the research methods used in last year's report. Ninety-nine percent of the olive oil consumed in the U.S. is imported.

The brands tested for the most recent report were Filippo Berio, Bertolli, Pompeian, Colavita and Star. The researchers also tested samples of Lucini, the top-selling premium Italian brand; Cobram Estate, the largest Australian olive oil producer; and California Olive Ranch, the leading U.S. producer.

California Olive Ranch, headquartered in Oroville, Calif., helped fund the research.

For the latest study, UC Davis researchers said they went to retailers in Northern, Central and Southern California in September and October and bought bottles labeled 100 percent extra-virgin olive oil from domestic and imported producers. They then subjected the oils to sensory and chemical tests.

According to the report, researchers found that 73 percent of the 134 samples from the eight producers failed the sensory, or taste and smell, tests established by the International Olive

Council, which is based in Madrid.

In addition, the report said, the imported and domestic samples were run through seven chemical laboratory tests. Seventy percent of the imports failed one particular test; 50 percent failed another test. Some of the samples failed five of the seven chemical laboratory tests.

Researchers said only 11 percent of the California-produced samples failed one test. The rest of those samples passed all of the chemical tests, as well as the sensory tests.

"This confirms what we found in the first report. Now, there are two reports and quite a bit of consistency," said Dan Flynn, executive director of the UC Davis Olive Center.

The International Olive Council, whose members account for 97 percent of the global production of olive oil, was less convinced. In a statement released Wednesday, the organization said both reports had "the same evident undercurrent of aggressive, inexplicable criticism of imported olive oil quality."

Industry officials generally agree that the "extra-virgin" designation is proper for oil that is cold-processed to prevent degradation of aromatic compounds and has higher levels of healthful fats and antioxidants. It also has relatively low acidity levels.

Purity is a serious concern for some consumers. Some state agencies previously have uncovered oils labeled 100 percent extra-virgin olive oil that were blended with cheaper canola, seed or nut oils — a significant health threat to people with allergies. No such mixing of seed oils was found in last year's tests or the recent tests of products sold in California, according to the report.

Money is also at stake, as extra-virgin oil is often sold as a premium-priced product.

Yet consistently replicating the researchers' findings has proved challenging to a California legal team that led a class-action lawsuit over the purity of imported olive oil.

Last August, a group of chefs, restaurants and others filed a complaint in Orange County Superior Court claiming that several retailers and olive oil producers had misled Californians about the quality of the olive oil they sold.

But plaintiff attorney Daniel J. Callahan said his firm ran into difficulties when it sent olive oil samples to various laboratories for testing: The results, he said, were inconsistent.

"There were good grades in Georgia, but bad in California," Callahan said Wednesday. "It wasn't consistent enough to meet the profile of the kind of case" his firm handles.

The class-action complaint was dropped last month, Callahan said.

EXHIBIT F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-61781-CIV-LENARD

BEVERLY MEYER, Individually and on
Behalf of All Others Similarly Situated,

        Plaintiff,

vs.

COLAVITA USA INC., and COLAVITA
USA, L.L.C.,

        Defendants.

_____/

## NOTICE OF RULE 45 SUBPOENA TO MICHAEL J. SACHS

TO:    ALL PARTIES AND THEIR ATTORNEY'S OF RECORD

      Please take notice that, pursuant to Rule 34 and Rule 45 of the Federal Rules of Civil

Procedure, Plaintiff will inspect and copy the documents identified in the Exhibit A, attached hereto,

which are in the custody, possession or control of Michael J. Sachs at 9:30 a.m. on April 12, 2011 at

the following location:  Veritext Court Reporting, 550 S. Hope St., Suite 1775, Los Angeles, CA

90071.

      You are invited to attend the production in accordance with the Federal Rules of Civil

Procedure, or you may contact Plaintiff's counsel to obtain, at your expense, copies of the

documents produced.

1

DATED:  March 22, 2011

ROBBINS GELLER RUDMAN & DOWD LLP
STUART A. DAVIDSON
FLORIDA BAR NO. 084824
CULLIN A. O'BRIEN
FLORIDA BAR NO. 597341
MARK J. DEARMAN
FLORIDA BAR NO. 982407

_____
CULLIN A. O'BRIEN

120 E. Palmetto Park Road, Suite 500
Boca Raton, FL  33433
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
cobrien@rgrdlaw.com
mdearman@rgrdlaw.com

The Gerson Law Firm
Steven Gerson
8551 West Sunrise Blvd. Suite 300
Plantation, FL 33317
Telephone: 954/915-8888
954/915-9191 (fax)
sgerson@gersonlawfirm.com

*Attorneys for Plaintiff and the Class*

2

84

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2011 a true and correct copy of the foregoing was

served by first class mail to the following:


Robert L. Ciotti
CARLTON FIELDS, P.A.
4221 W. Boy Scout Boulevard, Suite 1000
Tampa, Florida  33607-5780

Sylvia Rivera
Morrison & Foerster LLP
555 W. Fifth Street, Suite 3500
Los Angeles, CA  90013-1024

*Attorneys for Defendant Colavita USA, L.L.C.*

_____
CULLIN A. O'BRIEN
Robbins Geller Rudman & Dowd LLP.
E-mail:  cobrien@rgrdlaw.com

3

85

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## ATTACHMENT A

I.      **DEFINITIONS**

1.      "You" or "your" means Michael J. Sachs, Callahan & Blaine, and any assistant, employee, consultant, intern, law clerk, manager, partner, lawyer, associate, of counsel or any other agent or representative of Michael J. Sachs and Callahan & Blaine.

2.      "Document" shall have the broadest meaning permitted under the Federal Rules of Civil Procedure, and includes, without limitation, any writing or tangible thing of any kind as well as any other means by which information is recorded or transmitted, including, but not limited to, audio or video tape recordings, electronic mail ("e-mail"), microfilms, photographs, charts, drawings, graphs, punch cards, computer programs, printouts, data processing records, work files, memoranda, notes, and the written information necessary to understand and use such material.   The term "document" shall also include any data or information that is stored electronically or in a computer, whether or not reduced to printed form.   A draft or non-identical copy of any document is a separate document within the meaning of this term.

3.      "Employee" refers to any individual currently in the employ of, or at any time employed by, the relevant defendant or non-party.

4.      "Representative" refers to any present or former director, officer, partner, agent, counsel, employee or other person acting or purporting to act on behalf of a corporation, professional corporation, firm, partnership, proprietorship, association, business entity or other person.

5.      "Relating to" shall have the broadest possible meaning and includes, but is not limited to, relating to, referring to, connected with, commenting on, describing, evidencing, concerning, or constituting.

1

6.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.   The terms "and" and "or" shall be construed as and/or.

7.      The terms "all," "any" and "each" shall be construed as all and each and as necessary to make the requested inclusive rather than exclusive.

8.      The singular of any term shall include the plural, and the plural shall include the singular.

9.      The words "testing" and "analysis" shall be construed in the broadest sense and shall include all scientific or quasi-scientific studies, whether or not a manuscript was prepared, including, but not limited to, human studies, animal studies, pre-clinical and clinical studies, practice tests, research projects, and scientific manuscripts, whether published or unpublished.

10.     "Results" shall be construed in the broadest sense and shall include any and all documents relating to the outcome of any and all tests or analysis referred to herein.

11.     "Declaration" means the Declaration of Michael J. Sachs Requesting Dismissal of Class Action, filed in the Superior Court of California, County of Orange on December 8, 2010, in the action styled: *Martin, et al v. Carapelli USA, LLC, et al.*, No. 30-2010-00395464.

12.     "Paragraph 2" of the Declaration refers to the following language:

Callahan & Blaine has had[sic] conducted exhaustive testing and analysis of the olive oil products of the Defendants in the instant action to confirm that they support the allegations made in the Complaint.  Unfortunately, the results of the testing have been inconclusive and additional testing and analysis is necessary in order to determine whether this action should be maintained against the currently named Defendants.

2

## II.   INSTRUCTIONS

1.   The documents to be produced pursuant to these requests specifically embrace, in addition to documents within your possession, custody or control, documents within the possession, custody or control of any of your agents, accountants, representatives or attorneys. Such documents also embrace originals and identical copies (whether different from the original because of notes made thereon or otherwise) of the documents described in these requests.

2.   In the event that any document called for by these requests has been destroyed or discarded, that document is to be identified by stating:

(a)   the nature of the document;

(b)   the names of any addressor or addressee;

(c)   if there are any indicated or blind copies;

(d)   the document's date, subject matter, number of pages, and attachments or appendices;

(e)   all persons to whom the document was distributed, shown or explained;

(f)   its date of destruction or discard, manner of destruction and/or discard; and

(g)   the persons authorizing or carrying out such destruction or discard.

3.   If any documents are within the scope of any request for production but are not being produced, or are being produced with portions redacted, pursuant to any claim of privilege or confidentiality:

(a)   state the nature of the privilege claimed (*i.e.*, attorney-client, work-product, etc.);

3

(b)      state the name of the person or entity claiming privilege and the name of the attorney, if any, with respect to whom the privilege is claimed;

(c)      state the facts upon which you rely as the basis for claiming any privilege as to the specific information or document; and

(d)      state the name of such document; identify the type of document (*i.e.*, letter, memo, etc.); set forth the subject matter thereof; identify the person who prepared it and each person (if any) who signed it; identify each person to whom it was directed, circulated, or shown; and identify each person now in possession of the document.   If any document is produced in redacted form, the word "redacted" is to be placed in the redacted section of the document.

4.      All documents shall be produced that respond to any part, clause, or sentence of any paragraph of these requests.

5.      Requests that are stated in the present tense include the past tense and those in the past tense include the present tense.

6.      You shall produce all documents in a form which renders the document susceptible to copying either by photocopy or otherwise.

7.      The following document requests are continuing in nature and in the event you become aware of or acquire additional information relating or referring thereto, such additional information is to be promptly produced.

## III.   DOCUMENT REQUESTS

1.      Any and all documents relating to the testing, and the results thereof, whether conclusive or inconclusive, of "the olive oil products of the Defendants" referred to in paragraph 2 of the Declaration.

4

2.      Any and all documents relating to the analysis, and the results thereof, whether conclusive or inconclusive, of "the olive oil products of the Defendants" referred to in paragraph 2 of the Declaration.

3.      Any and all documents upon which you based the following representation contained in paragraph 2 of the Declaration: "Callahan & Blaine has had[sic] conducted exhaustive testing and analysis of the olive oil products of the Defendants in the instant action to confirm that they support the allegations made in the Complaint."

4.      Any and all documents upon which you based the following representation contained in paragraph 2 of the Declaration: "Unfortunately, the results of the testing have been inconclusive and additional testing and analysis is necessary in order to determine whether this action should be maintained against the currently named Defendants."

5

91

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-61793-CIV-LENARD

JOSEPH NACHIO, Individually and on Behalf
of All Others Similarly Situated,

        Plaintiff,

vs.

AMERICAN RICE INC., POMPEIAN INC.,
and SALOV NORTH AMERICA
CORPORATION,

        Defendants.

_____/

**NOTICE OF RULE 45 SUBPOENA TO MICHAEL J. SACHS**

TO:    ALL PARTIES AND THEIR ATTORNEY'S OF RECORD

    Please take notice that, pursuant to Rule 34 and Rule 45 of the Federal Rules of Civil Procedure, Plaintiff will inspect and copy the documents identified in the Exhibit A, attached hereto, which are in the custody, possession or control of Michael J. Sachs at 9:30 a.m. on April 12, 2011 at the following location: Veritext Court Reporting, 550 S. Hope St., Suite 1775, Los Angeles, CA 90071.

    You are invited to attend the production in accordance with the Federal Rules of Civil Procedure, or you may contact Plaintiff's counsel to obtain, at your expense, copies of the documents produced.

1

DATED:  March 22, 2011

ROBBINS GELLER RUDMAN & DOWD LLP
STUART A. DAVIDSON
FLORIDA BAR NO. 084824
CULLIN A. O'BRIEN
FLORIDA BAR NO. 597341
MARK J. DEARMAN
FLORIDA BAR NO. 982407

_Cullin O'Brien_

CULLIN A. O'BRIEN

120 E. Palmetto Park Road, Suite 500
Boca Raton, FL  33433
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
cobrien@rgrdlaw.com
mdearman@rgrdlaw.com

The Gerson Law Firm
Steven Gerson
8551 West Sunrise Blvd. Suite 300
Plantation, FL 33317
Telephone: 954/915-8888
954/915-9191 (fax)
sgerson@gersonlawfirm.com

**_Attorneys for Plaintiff and the Class_**

2

93

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2011 a true and correct copy of the foregoing was served

by first class mail to the following:

Robert L. Ciotti
CARLTON FIELDS, P.A.
4221 W. Boy Scout Boulevard, Suite 1000
Tampa, Florida 33607-5780
Telephone: 813/223-7000
Facsimile: 813/229-4133
rciotti@carltonfields.com

David F. McDowell
Sylvia Rivera
Purvi G. Patel
MORRISON & FOERSTER LLP
555 West Fifth Street, Suite 3500
Los Angeles, California 90013-1024
Telephone: 213/892-5200
Facsimile: 213/892-5454
dmcdowell@mofo.com
srivera@mofo.com
ppatel@mofo.com

*Attorneys for Defendant Pompeian, Inc.*

Patricia E. Lowry
Amy Bloom
SQUIRE, SANDERS & DEMPSEY L.L.P.
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, Florida 33401-6198
Telephone: 561/650-7200
Facsimile: 561/655-1509
plovvry@ssd.com
amy.bloom@ssd.com

Jeffrey Margulies
FULBRIGHT & JAWORSKI L.L.P.
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone: 213/892-9200
Facsimile: 213/892-9494
jmargulies@fulbright.com

*Attorneys for Defendant American Rice, Inc.*

Sean A. Commons
Mark E. Haddad
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, California 90013-1024
Telephone: 213/896-6000
Facsimile: 213/896-6600
mhaddad@sidley.com

Robert L. Ciotti
CARLTON FIELDS, P.A.
4221 W. Boy Scout Boulevard, Suite 1000
Tampa, Florida 33607-5780
Telephone: 813/223-7000
Facsimile: 813/229-4133
rciotti@carltonfields.com

*Attorneys for Salov North America Corp.*

CULLIN A. O'BRIEN
Robbins Geller Rudman & Dowd LLP.
E-mail: cobrien@rgrdlaw.com

3

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| JOSEPH NACHIO,<br>*Plaintiff*<br>v.<br>AMERICAN RICE INC., POMPEIAN INC., and<br>SALOV NORTH AMERICA CORPORATION,<br>*Defendant* | )<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.   10-33154

(If the action is pending in another district, state where:

Southern District of Florida        )

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Michael J. Sachs, Esq., Callahan & Blaine
      3 Hutton Centre Dr., 9th Floor, Santa Ana, California 92707

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following
documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the
material: See "Attachment

| Place: Veritext Court Reporting<br>         550 S. Hope St., Suite 1775, Los Angeles, CA 90071 | Date and Time:<br><br>04/12/2001 9:30 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or
other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party
may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

        The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule
45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are
attached.

Date:  _____

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____<br>*Signature of Clerk or Deputy Clerk* | | _____<br>*Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*        Joseph Nachio
_____ , who issues or requests this subpoena, are:

Cullin A. O'Brien, Esq.
Robbins Geller Rudman & Dowd LLP
120 E. Palmetto Park Road, Suite 500, Boca Raton, FL  33432, Tel. 561/750-3000, cobrien@rgrdlaw.com

95

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   10-33154

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____  on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____               _____
                                                          *Server's signature*

                                                 _____
                                                          *Printed name and title*

                                                 _____
                                                          *Server's address*

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***

**(A) *Appearance Not Required.*** A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B) *Objections.*** A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***

**(A) *When Required.*** On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B) *When Permitted.*** To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C) *Specifying Conditions as an Alternative.*** In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:

**(A) *Documents.*** A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B) *Form for Producing Electronically Stored Information Not Specified.*** If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C) *Electronically Stored Information Produced in Only One Form.*** The person responding need not produce the same electronically stored information in more than one form.

**(D) *Inaccessible Electronically Stored Information.*** The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***

**(A) *Information Withheld.*** A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B) *Information Produced.*** If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

<u>**ATTACHMENT A**</u>

**I.      DEFINITIONS**

1.      "You" or "your" means Michael J. Sachs, Callahan & Blaine, and any assistant, employee, consultant, intern, law clerk, manager, partner, lawyer, associate, of counsel or any other agent or representative of Michael J. Sachs and Callahan & Blaine.

2.      "Document" shall have the broadest meaning permitted under the Federal Rules of Civil Procedure, and includes, without limitation, any writing or tangible thing of any kind as well as any other means by which information is recorded or transmitted, including, but not limited to, audio or video tape recordings, electronic mail ("e-mail"), microfilms, photographs, charts, drawings, graphs, punch cards, computer programs, printouts, data processing records, work files, memoranda, notes, and the written information necessary to understand and use such material.   The term "document" shall also include any data or information that is stored electronically or in a computer, whether or not reduced to printed form.  A draft or non-identical copy of any document is a separate document within the meaning of this term.

3.      "Employee" refers to any individual currently in the employ of, or at any time employed by, the relevant defendant or non-party.

4.      "Representative" refers to any present or former director, officer, partner, agent, counsel, employee or other person acting or purporting to act on behalf of a corporation, professional corporation, firm, partnership, proprietorship, association, business entity or other person.

5.      "Relating to" shall have the broadest possible meaning and includes, but is not limited to, relating to, referring to, connected with, commenting on, describing, evidencing, concerning, or constituting.

1

6.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.  The terms "and" and "or" shall be construed as and/or.

7.      The terms "all," "any" and "each" shall be construed as all and each and as necessary to make the requested inclusive rather than exclusive.

8.      The singular of any term shall include the plural, and the plural shall include the singular.

9.      The words "testing" and "analysis" shall be construed in the broadest sense and shall include all scientific or quasi-scientific studies, whether or not a manuscript was prepared, including, but not limited to, human studies, animal studies, pre-clinical and clinical studies, practice tests, research projects, and scientific manuscripts, whether published or unpublished.

10.     "Results" shall be construed in the broadest sense and shall include any and all documents relating to the outcome of any and all tests or analysis referred to herein.

11.     "Declaration" means the Declaration of Michael J. Sachs Requesting Dismissal of Class Action, filed in the Superior Court of California, County of Orange on December 8, 2010, in the action styled: *Martin, et al v. Carapelli USA, LLC, et al.*, No. 30-2010-00395464.

12.     "Paragraph 2" of the Declaration refers to the following language:

Callahan & Blaine has had[sic] conducted exhaustive testing and analysis of the olive oil products of the Defendants in the instant action to confirm that they support the allegations made in the Complaint.  Unfortunately, the results of the testing have been inconclusive and additional testing and analysis is necessary in order to determine whether this action should be maintained against the currently named Defendants.

2

## II.   INSTRUCTIONS

1.     The documents to be produced pursuant to these requests specifically embrace, in addition to documents within your possession, custody or control, documents within the possession, custody or control of any of your agents, accountants, representatives or attorneys. Such documents also embrace originals and identical copies (whether different from the original because of notes made thereon or otherwise) of the documents described in these requests.

2.     In the event that any document called for by these requests has been destroyed or discarded, that document is to be identified by stating:

    (a)     the nature of the document;

    (b)     the names of any addressor or addressee;

    (c)     if there are any indicated or blind copies;

    (d)     the document's date, subject matter, number of pages, and attachments or appendices;

    (e)     all persons to whom the document was distributed, shown or explained;

    (f)     its date of destruction or discard, manner of destruction and/or discard; and

    (g)     the persons authorizing or carrying out such destruction or discard.

3.     If any documents are within the scope of any request for production but are not being produced, or are being produced with portions redacted, pursuant to any claim of privilege or confidentiality:

    (a)     state the nature of the privilege claimed (*i.e.*, attorney-client, work-product, etc.);

(b)     state the name of the person or entity claiming privilege and the name of the attorney, if any, with respect to whom the privilege is claimed;

(c)     state the facts upon which you rely as the basis for claiming any privilege as to the specific information or document; and

(d)     state the name of such document; identify the type of document (*i.e.*, letter, memo, etc.); set forth the subject matter thereof; identify the person who prepared it and each person (if any) who signed it; identify each person to whom it was directed, circulated,  or shown; and identify each person now in possession of the document.   If any document is produced in redacted form, the word "redacted" is to be placed in the redacted section of the document.

4.     All documents shall be produced that respond to any part, clause, or sentence of any paragraph of these requests.

5.     Requests that are stated in the present tense include the past tense and those in the past tense include the present tense.

6.     You shall produce all documents in a form which renders the document susceptible to copying either by photocopy or otherwise.

7.     The following document requests are continuing in nature and in the event you become aware of or acquire additional information relating or referring thereto, such additional information is to be promptly produced.

## III.   DOCUMENT REQUESTS

1.     Any and all documents relating to the testing, and the results thereof, whether conclusive or inconclusive, of "the olive oil products of the Defendants" referred to in paragraph 2 of the Declaration.

4

2.     Any and all documents relating to the analysis, and the results thereof, whether conclusive or inconclusive, of "the olive oil products of the Defendants" referred to in paragraph 2 of the Declaration.

3.     Any and all documents upon which you based the following representation contained in paragraph 2 of the Declaration: "Callahan & Blaine has had[sic] conducted exhaustive testing and analysis of the olive oil products of the Defendants in the instant action to confirm that they support the allegations made in the Complaint."

4.     Any and all documents upon which you based the following representation contained in paragraph 2 of the Declaration: "Unfortunately, the results of the testing have been inconclusive and additional testing and analysis is necessary in order to determine whether this action should be maintained against the currently named Defendants."

5

EXHIBIT G

CALLAHAN & BLAINE
A Professional Law Corporation
Daniel J. Callahan (Bar No. 91490)
daniel@callahan-law.com
Michael J. Sachs (Bar No. 134468)
michael@callahan-law.com
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
(714) 241-4444
(714) 241-4445 Fax

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEVERLY MEYER, | Case No. 10-35097 |
| Plaintiff, | |
| v. | **OBJECTIONS TO SUBPOENA TO PRODUCE DOCUMENTS OF MICHAEL J. SACHS** |
| COLAVITA USA INC. and COLAVITA USA, L.L.C. | |
| Defendants. | Date: April 12, 2011 |
| | Time: 9:30 a.m. |
| | Location: Veritex Court Reporting |
| | 550 S. Hope St. |
| | Suite 1775 |
| | Los Angeles, CA 90071 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

COMES NOW Michael J. Sachs ("Responding Party") and objects to the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action as follows:

## GENERAL OBJECTIONS AND QUALIFICATIONS

Responding Party specifically asserts the following objections to each of the demands and the subpoena to testify:

1.  Privacy: Responding Party objects to the demands and the subpoena to testify to the extent they seek the disclosure of information regarding confidential

1                                                          OBJECTION TO SUBPOENA

103

1  personnel files, confidential financial information or other information protected under
2  the right to privacy provided by Article I, Section 1 of the California Constitution, the
3  United States Constitution, statutory rights to privacy, and common-law privileges
4  pertaining to the disclosure of trade secrets, confidential information, tax returns,
5  schedules and related documentation.

6      2.   <u>Confidential Information</u>: Responding Party generally objects to each and
7  every demand and the subpoena to testify insofar as they purport to require the deponent
8  to furnish information in his possession, if such would require the divulgence of
9  confidential information or communications that are proprietary to Responding Party.
10  Responding Party does not permit his information to be provided until such time, if
11  ever, as an appropriate protective order is in place or such production is compelled by
12  law, subject to a protective order requiring the execution of a secrecy agreement
13  affidavit prior to disclosure.

14      3.   <u>Burden and Oppression</u>: Responding Party objects on the grounds that the
15  subpoena is burdensome, oppressive, overbroad and will cause a non-party unwarranted
16  annoyance and undue expense.
17

18      The foregoing General Objections and Qualifications apply to each and every
19  response to each demand herein, and are incorporated by reference to the extent
20  applicable in each of the specific responses set forth below as though fully set forth
21  therein.  The failure to mention one of the foregoing objections in any of the specific
22  responses set forth below shall not be deemed a waiver of such objections.
23

24  **<u>OBJECTION TO SUBPOENA</u>**
25      Responding Party objects to the subpoena to the extent that it is an attempt to
26  obtain information for other disputes or for any issues unrelated to the instant action.
27
28

2

OBJECTION TO SUBPOENA

1 **OBJECTION TO REQUEST FOR PRODUCTION OF DOCUMENTS**

2 **REQUEST FOR PRODUCTION NO. 1:**

3      Any and all documents relating to the testing, and the results thereof, whether

4 conclusive or inconclusive, of "the olive oil products of the Defendants" referred to in

5 paragraph 2 of the Declaration.

6 **OBJECTION TO REQUEST FOR PRODUCTION NO. 1:**

7      Objection, this request is overbroad, burdensome, especially when taking into

8 account the defined terms, and requires the Responding Party to speculate as to what

9 documents are being sought.  Additionally, the request seeks documents which are

10 protected by the attorney-work product doctrine and attorney-client privilege.  No

11 documents will be produced.

12

13 **REQUEST FOR PRODUCTION NO. 2:**

14      Any and all documents relating to the analysis, and the results thereof, whether

15 conclusive or inconclusive, of "the olive oil products of the Defendants" referred to in

16 paragraph 2 of the Declaration.

17 **OBJECTION TO REQUEST FOR PRODUCTION NO. 2:**

18      Objection, this request is overbroad, burdensome, especially when taking into

19 account the defined terms, and requires the Responding Party to speculate as to what

20 documents are being sought.  Additionally, the request seeks documents which are

21 protected by the attorney-work product doctrine and attorney-client privilege.  No

22 documents will be produced.

23

24 **REQUEST FOR PRODUCTION NO. 3:**

25      Any and all documents upon which you based the following representation

26 contained in paragraph 2 of the Declaration: "Callahan & Blaine has had [sic]

27 conducted exhaustive testing and analysis of the olive oil products of the Defendants in

28 the instant action to confirm that they support the allegations made in the Complaint."

1 | **OBJECTION TO REQUEST FOR PRODUCTION NO. 3:**

2      Objection, this request is overbroad, burdensome, especially when taking into

3 account the defined terms, and requires the Responding Party to speculate as to what

4 documents are being sought.  Additionally, the request seeks documents which are

5 protected by the attorney-work product doctrine and attorney-client privilege.  No

6 documents will be produced.

7

8 | **REQUEST FOR PRODUCTION NO. 4:**

9      Any and all documents upon which you based the following representation

10 contained in paragraph 2 of the Declaration: "Unfortunately, the results of the testing

11 have been inconclusive and additional testing and analysis is necessary in order to

12 determine whether this action should be maintained against the currently named

13 Defendants."

14 | **OBJECTION TO REQUEST FOR PRODUCTION NO. 4:**

15      Objection, this request is overbroad, burdensome, especially when taking into

16 account the defined terms, and requires the Responding Party to speculate as to what

17 documents are being sought.  Additionally, the request seeks documents which are

18 protected by the attorney-work product doctrine and attorney-client privilege.  No

19 documents will be produced.

20

21 Dated: March 29, 2011            CALLAHAN & BLAINE, APLC

22

23                     By:_____

24                       Michael J. Sachs

25

26 G:\Clients\3096\3096-02\Discovery\Objections to subpoena - Meyer v. Colavita.wpd

27

28

4

OBJECTION TO SUBPOENA

## PROOF OF SERVICE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 3 Hutton Centre, Ninth Floor, Santa Ana, California 92707.

On **March 30, 2011,** I served the foregoing document(s) entitled:

### OBJECTIONS TO SUBPOENA TO PRODUCE DOCUMENTS OF MICHAEL J. SACHS

on the interested parties in this action by placing [ ] the original [X] a true copy thereof enclosed in a sealed envelope addressed as follows:

Cullin A. O'Brien, Esq.
ROBBINS GELLER RUDMAN & DOWD LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432
(561) 750-3000
cobrien@rgrdlaw.com

[X]   **(BY MAIL):** I deposited such envelope in the mail at Santa Ana, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the United States Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

[ ]   **BY FEDEX:** I deposited such envelope at Santa Ana, California for collection and delivery by Federal Express with delivery fees paid or provided for in accordance with ordinary business practices. I am "readily familiar" with the firm's practice of collection and processing packages for overnight delivery by Federal Express. They are deposited with a facility regularly maintained by Federal Express for receipt on the same day in the ordinary course of business.

[ ]   **BY PERSONAL SERVICE:** I caused such document to be delivered by hand to the aforementioned addressee.

[ ]   **BY FACSIMILE:** I transmitted the foregoing document by facsimile to the party(s) identified above by using the facsimile number(s) indicated. Said transmission(s) were verified as complete and without error.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on **March 30, 2011,** at Santa Ana, California.

Jane Nichols

G:\Clients\3096\3096-02\Discovery\POS - Meyer v. Colavita.wpd

1  CALLAHAN & BLAINE
   A Professional Law Corporation
2  Daniel J. Callahan (Bar No. 91490)
   daniel@callahan-law.com
3  Michael J. Sachs (Bar No. 134468)
   michael@callahan-law.com
4  3 Hutton Centre Drive, Ninth Floor
   Santa Ana, California 92707
5  (714) 241-4444
   (714) 241-4445 Fax
6

7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

11  JOSEPH NACHIO                    )  Case No. 10-33154
                                     )
12           Plaintiff,              )
                                     )  OBJECTIONS TO SUBPOENA TO
13  v.                               )  PRODUCE DOCUMENTS OF
                                     )  MICHAEL J. SACHS
14  AMERICAN RICE INC., POMPEIAN     )
    INC., and SALOV NORTH AMERICA    )
15  CORPORATION,                     )  Date:       April 12, 2011
                                     )  Time:       9:30 a.m.
16           Defendants.             )  Location:   Veritex Court Reporting
                                     )              550 S. Hope St.
17  _____ )              Suite 1775
                                                    Los Angeles, CA 90071
18

19  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

20          COMES NOW Michael J. Sachs ("Responding Party") and objects to the

21  Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of

22  Premises in a Civil Action as follows:

23

24          **GENERAL OBJECTIONS AND QUALIFICATIONS**

25          Responding Party specifically asserts the following objections to each of the

26  demands and the subpoena to testify:

27          1.    Privacy: Responding Party objects to the demands and the subpoena to

28  testify to the extent they seek the disclosure of information regarding confidential

                                      1
                                            _____
                                            OBJECTION TO SUBPOENA

1   personnel files, confidential financial information or other information protected under

2   the right to privacy provided by Article I, Section 1 of the California Constitution, the

3   United States Constitution, statutory rights to privacy, and common-law privileges

4   pertaining to the disclosure of trade secrets, confidential information, tax returns,

5   schedules and related documentation.

6        2.   <u>Confidential Information</u>: Responding Party generally objects to each and

7   every demand and the subpoena to testify insofar as they purport to require the deponent

8   to furnish information in his possession, if such would require the divulgence of

9   confidential information or communications that are proprietary to Responding Party.

10  Responding Party does not permit his information to be provided until such time, if

11  ever, as an appropriate protective order is in place or such production is compelled by

12  law, subject to a protective order requiring the execution of a secrecy agreement

13  affidavit prior to disclosure.

14       3.   <u>Burden and Oppression</u>: Responding Party objects on the grounds that the

15  subpoena is burdensome, oppressive, overbroad and will cause a non-party unwarranted

16  annoyance and undue expense.

17

18       The foregoing General Objections and Qualifications apply to each and every

19  response to each demand herein, and are incorporated by reference to the extent

20  applicable in each of the specific responses set forth below as though fully set forth

21  therein.  The failure to mention one of the foregoing objections in any of the specific

22  responses set forth below shall not be deemed a waiver of such objections.

23

24                    **OBJECTION TO SUBPOENA**

25       Responding Party objects to the subpoena to the extent that it is an attempt to

26  obtain information for other disputes or for any issues unrelated to the instant action.

27

28

2                                    OBJECTION TO SUBPOENA

**OBJECTION TO REQUEST FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1:**

Any and all documents relating to the testing, and the results thereof, whether conclusive or inconclusive, of "the olive oil products of the Defendants" referred to in paragraph 2 of the Declaration.

**OBJECTION TO REQUEST FOR PRODUCTION NO. 1:**

Objection, this request is overbroad, burdensome, especially when taking into account the defined terms, and requires the Responding Party to speculate as to what documents are being sought.  Additionally, the request seeks documents which are protected by the attorney-work product doctrine and attorney-client privilege.  No documents will be produced.

**REQUEST FOR PRODUCTION NO. 2:**

Any and all documents relating to the analysis, and the results thereof, whether conclusive or inconclusive, of "the olive oil products of the Defendants" referred to in paragraph 2 of the Declaration.

**OBJECTION TO REQUEST FOR PRODUCTION NO. 2:**

Objection, this request is overbroad, burdensome, especially when taking into account the defined terms, and requires the Responding Party to speculate as to what documents are being sought.  Additionally, the request seeks documents which are protected by the attorney-work product doctrine and attorney-client privilege.  No documents will be produced.

**REQUEST FOR PRODUCTION NO. 3:**

Any and all documents upon which you based the following representation contained in paragraph 2 of the Declaration: "Callahan & Blaine has had [sic] conducted exhaustive testing and analysis of the olive oil products of the Defendants in the instant action to confirm that they support the allegations made in the Complaint."

OBJECTION TO SUBPOENA

1    **OBJECTION TO REQUEST FOR PRODUCTION NO. 3:**

2       Objection, this request is overbroad, burdensome, especially when taking into

3    account the defined terms, and requires the Responding Party to speculate as to what

4    documents are being sought. Additionally, the request seeks documents which are

5    protected by the attorney-work product doctrine and attorney-client privilege. No

6    documents will be produced.

7

8    **REQUEST FOR PRODUCTION NO. 4:**

9       Any and all documents upon which you based the following representation

10    contained in paragraph 2 of the Declaration: "Unfortunately, the results of the testing

11    have been inconclusive and additional testing and analysis is necessary in order to

12    determine whether this action should be maintained against the currently named

13    Defendants."

14    **OBJECTION TO REQUEST FOR PRODUCTION NO. 4:**

15       Objection, this request is overbroad, burdensome, especially when taking into

16    account the defined terms, and requires the Responding Party to speculate as to what

17    documents are being sought. Additionally, the request seeks documents which are

18    protected by the attorney-work product doctrine and attorney-client privilege. No

19    documents will be produced.

20

21    Dated: March 29, 2011             CALLAHAN & BLAINE, APLC

22

23                          By

24                             Michael J. Sachs

25

26

27    G:\Clients\3096\3096-02\Discovery\Objections to subpoena - Nachio v. American Rice.wpd

28

OBJECTION TO SUBPOENA

**PROOF OF SERVICE**

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 3 Hutton Centre, Ninth Floor, Santa Ana, California 92707.

On **March 30, 2011,** I served the foregoing document(s) entitled:

**OBJECTIONS TO SUBPOENA TO PRODUCE DOCUMENTS OF MICHAEL J. SACHS**

on the interested parties in this action by placing [ ] the original [X] a true copy thereof enclosed in a sealed envelope addressed as follows:

Cullin A. O'Brien, Esq.
ROBBINS GELLER RUDMAN & DOWD LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432
(561) 750-3000
cobrien@rgrdlaw.com

[X]    **(BY MAIL):**  I deposited such envelope in the mail at Santa Ana, California.  The envelope was mailed with postage thereon fully prepaid.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  It is deposited with the United States Postal Service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

[ ]    **BY FEDEX:** I deposited such envelope at Santa Ana, California for collection and delivery by Federal Express with delivery fees paid or provided for in accordance with ordinary business practices.  I am "readily familiar" with the firm's practice of collection and processing packages for overnight delivery by Federal Express.  They are deposited with a facility regularly maintained by Federal Express for receipt on the same day in the ordinary course of business.

[ ]    **BY PERSONAL SERVICE:**  I caused such document to be delivered by hand to the aforementioned addressee.

[ ]    **BY FACSIMILE:**  I transmitted the foregoing document by facsimile to the party(s) identified above by using the facsimile number(s) indicated.  Said transmission(s) were verified as complete and without error.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on **March 30, 2011,** at Santa Ana, California.

_Jane Nichols_
Jane Nichols

G:\Clients\3096\3096-02\Discovery\POS - Meyer v. Colavita.wpd

112

EXHIBIT H

## SUPERIOR COURT OF CALIFORNIA,
## COUNTY OF ORANGE
## CIVIL COMPLEX CENTER

### MINUTE ORDER

DATE: 11/03/2010                    TIME: 08:30:00 AM         DEPT:  CX105
JUDICIAL OFFICER PRESIDING: Nancy Wieben Stock
CLERK:  Larry S Brown
REPORTER/ERM: Carolyn Marie Gregor CSR# 2351
BAILIFF/COURT ATTENDANT: Chantel Cepeda

CASE NO: **30-2010-00395464-CU-FR-CXC**  CASE INIT.DATE: 08/02/2010
CASE TITLE: **Martin vs. Carapelli USA, LLC**
CASE CATEGORY: Civil - Unlimited       CASE TYPE: Fraud

EVENT ID/DOCUMENT ID: 71046001
**EVENT TYPE**: Case Management Conference

**APPEARANCES**
Daniel J. Callahan, from Callahan & Blaine, present for Plaintiff(s).

Case Management Conference held.

Counsel states consumer class action is currently pending in U.S. District Court in Florida.

Plaintiff to file notice of any futher related cases.

Counsel further states testing in Germany has been completed and testing in U.S. is ongoing.

Court orders amended complaint be filed and served no later than 12/31/10.

On Court's own motion, Case Management Conference is continued to 01/19/2011 at 08:30 AM in this department.

Court further orders case management conference statement be filed 5 days prior to 01/19/11; grants leave re: service of complaint.

Court orders plaintiff to give notice.

DATE: 11/03/2010                    MINUTE ORDER                          Page 1
DEPT:  CX105                                                        Calendar No.

113

1                    <u>DECLARATION OF SERVICE BY MAIL</u>

2          I, the undersigned, declare:

3          1.      That declarant is and was, at all times herein mentioned, a citizen of the

4   United States and a resident of the County of San Diego, over the age of 18 years, and

5   not a party to or interested party in the within action; that declarant's business address

6   is 655 West Broadway, Suite 1900, San Diego, California 92101.

7          2.      That on May 6, 2011, declarant served the MOTION TO COMPEL by

8   depositing a true copy thereof in a United States mailbox at San Diego, California in a

9   sealed envelope with postage thereon fully prepaid and addressed to the parties listed

10  on the attached Service List.

11         3.      That there is a regular communication by mail between the place of

12  mailing and the places so addressed.

13         I declare under penalty of perjury that the foregoing is true and correct.

14  Executed on May 6, 2011, at San Diego, California.

15
                                    _____
16                                              SUSAN L. HAMILTON

17

18

19

20

21

22

23

24

25

26

27

28

622973_1

OLIVE OIL - COLAVITA
Service List - 5/6/2011   (10-0161)
Page 1 of  1

**Counsel For Defendant(s)**

Robert L. Ciotti
E. Kelly Bittick, Jr.
Carlton Fields, P.A.
4221 West Boy Scout Blvd.
Tampa, FL  33607
  813/223-7000
  813/229-4133 (Fax)

Tarifa B. Laddon
Jeffrey Brian Margulies
John A. O'Malley
Fulbright & Jaworski L.L.P.
555 S. Flower, 41st Floor
Los Angeles, CA  90071
  213/892-9200
  213/892-9494 (Fax)

Mark E. Haddad
Sidley Austin LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA  90013-1010
  213/896-6000
  213/896-6600 (Fax)

Amy  Bloom
Patricia E. Lowry
Squire Sanders LLP
777 South Flagler Drive
1900 Phillips Point West
West Palm Beach, FL  33401
  561/650-7200
  561/655-1509 (Fax)

**Counsel For Plaintiff(s)**

Christopher  Collins
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
  619/231-1058
  619/231-7423 (Fax)

Stuart A. Davidson
Mark  Dearman
Cullin A. O'Brien
Robbins Geller Rudman & Dowd LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
  561/750-3000
  561/750-3364 (Fax)

Third-Party
Michael J. Sachs
Callahan & Blaine
3 Hutton Centre Drive
Ninth Floor
Santa Ana, CA  92707
714/241-4444
714/241-4445 (fax)